Fred **DANFORD**, Plaintiff-Appellee,

v.

Albert E. **SCHWABACHER**, Jr., et al.,
Defendants-Appellants.

No. 72–1811.

United States Court of Appeals,
Ninth Circuit.

Dec. 3, 1973.

Rehearing Denied Jan. 24, 1974.

Thomas A. Welch, and E. Judge Elderkin (argued), San Francisco, Cal., for defendants-appellants.

Thomas A. H. Hartwell (argued), of Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for plaintiff-appellee.

## OPINION

Before MERRILL and HUFSTED-LER, Circuit Judges, and HILL,* District Judge.

HUFSTEDLER, Circuit Judge:

Schwabacher & Company ("Schwabacher") and its codefendants appeal from an order denying their motion to stay Danford's district court action pending referral of Danford's claims to arbitration pursuant to 9 U.S.C. § 3.[1] We hold that the order is not appealable.

■ The grant or denial of a stay of an action pending arbitration under 9 U.S.C. § 3 is not a "final decision" appealable under 28 U.S.C. § 1291. (Alexander v. Pacific Maritime Ass'n (9th Cir. 1964) 332 F.2d 266, 267; New England Power Co. v. Asiatic Petroleum Corp. (1st Cir. 1972) 456 F.2d 183.) Appellants did not attempt to invoke the Interlocutory Appeals Act of 1958 (28 U.S.C. § 1292(b)). Therefore, the appeal is foreclosed unless the denial of the stay is an interlocutory order refusing an injunction within the meaning of 28 U.S.C. § 1292(a)(1).[2]

■ Determination of the section 1292(a)(1) issue necessarily requires an inquiry into the procedural anomalies created by the *Enelow-Ettelson* rule,[3] which makes appealability turn on whether the underlying action is properly characterized as one "at law" or "in equity" as those terms were used prior to the merger of the two forms of action. The Supreme Court has recognized that the *Enelow-Ettelson* rule is a remnant from the jurisprudential attic and has confined its operation, but it has refused to discard the rule. (Baltimore Contractors, Inc. v. Bodinger (1955) 348 U.S. 176, 184–185, 75 S.Ct. 249, 99 L.Ed. 233.) In its surviving form, *Enelow-Ettelson* permits an appeal from an interlocutory order granting or denying a stay pending arbitration if (a) the action in which the motion for a stay was made could have been maintained as an action at law before the merger of law and equity, and (b) the stay was sought to permit prior determination of an equitable defense or counterclaim. (*E.g.,* Chronicle Publishing Co. v. National Broadcasting Co. (9th Cir. 1961) 294 F.2d 744, 746; Standard Chlorine of Delaware, Inc. v. Leonard (2d Cir. 1967) 384 F.2d 304, 308; Jackson Brewing Co. v. Clarke (5th Cir. 1962) 303 F.2d 844, 845; *see* 9 Moore's Federal Practice ¶¶ 110.20[3], 110.20[4.-1] (2d ed. 1973).)[4]

---

* Central District of California, sitting by designation.

1. 9 U.S.C. § 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing [*sic*] the applicant for the stay is not in default in proceeding with such arbitration."

2. Section 1292(a)(1) provides: "The courts of appeals shall have jurisdiction of appeals from:

"(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]"

3. Enelow v. New York Life Ins. Co. (1935) 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed 440; Ettelson v. Metropolitan Life Ins. Co. (1942) 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176. *See also* Baltimore Contractors, Inc. v. Bodinger (1955) 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233.

4. Application of the *Enelow-Ettelson* rule cannot be escaped here as it was in Power Replacements, Inc. v. Air Preheater Co. (9th Cir. 1970) 426 F.2d 980 and A. & E. Plastik Pak Co. v. Monsanto Co. (9th Cir. 1968) 396 F.2d 710. In those two cases we held appealable orders denying motions to abate ar-

The second half of the *Enelow-Ettelson* test for appealability—interposition of an equitable defense or counterclaim—has been met in the case at bench. Reliance upon an arbitration agreement to avoid immediate litigation is deemed an equitable defense, even though the Chancellor might have been astonished to receive that intelligence. (Shanferoke Coal & Supply Corp. v. Westchester Service Corp. (1935) 293 U.S. 449, 452, 55 S.Ct. 313, 79 L.Ed. 583; Standard Chlorine of Delaware, Inc. v. Leonard, *supra* at 308.)

We are required, therefore, to examine the complaint to decide whether the first step of *Enelow-Ettelson* has been satisfied. Characterization of modern pleadings according to rules of a bygone legal system is a simple, though peculiar, exercise if the averments and prayers closely resemble either their legal or equitable ancestors. (*E. g.*, Ross v. Twentieth Century-Fox Film Corp. (9th Cir. 1956) 236 F.2d 632, 633 (action for breach of contract clearly common law type action).) The difficulty of the task is not significantly increased when the legal and equitable claims are only slightly mixed. (*E. g.*, Alexander v. Pacific Maritime Ass'n, *supra* at 267–268 (damage demands "plainly subordinate" to prayers for equitable relief).) However, *Enelow-Ettelson* is virtually impossible to apply to a complaint like Danford's in which the averments and prayers are a purée of legal and equitable theories and of claims that had no antecedents in the old bifurcated system.

Danford alleged facts which, if true, reveal a scheme contrived by the defendants to induce Danford, by fraud, coercion, and various forms of conduct violating provisions of the federal securities laws, to become a general partner of Schwabacher in order to gain control of his customer account. Through personal investments during his 48 years of employment with Schwabacher, Danford had accumulated more than $1,500,000 in his account with the firm, a securities and commodities broker-dealer. Unknown to Danford, Schwabacher was in extremely poor financial condition when the defendants succeeded in persuading him to invest $15,000 for a partnership interest. Danford alleges that, through a series of misrepresentations and nondisclosures and under coercive pressure and economic duress, he was induced by defendants to execute a series of documents. Under the terms of the agreements he signed, Danford became both a partner in the firm and a member of the New York Stock Exchange, Schwabacher gained control of his customer account, and he participated in the merger of Schwabacher into Blair & Co., Inc. ("Blair"), another securities and commodities broker-dealer. Blair was also in financial difficulty when the merger occurred. It later succumbed, first to liquidation supervised by the New York Stock Exchange and then to involuntary bankruptcy proceedings.

Danford's claims against Blair will be subordinated and all of Blair's assets will be distributed to prior creditors.[5] Accordingly, unless Danford either can undo his participation in these transactions or can be made whole by recovering damages from the defendants, his venture into the Schwabacher firm will cost him more than $1,500,000. Danford sought rescission, declaratory relief, and compensatory and punitive damages; he invoked both equitable and common law theories of recovery and asserted a right to relief under sections 12(2) and 17(a) of the Securities Act of 1933 (15 U.S.C. §§ 77l(2), 77q(a)) and section 10(b) of the Securities Exchange Act of 1934

bitration commenced before the initiation of the district court actions in which the motions were made, reasoning that the exercise of power to interfere with a proceeding already pending in a different forum is a "classic" form of injunctive relief and hence within the express terms of 28 U.S.C. § 1292(a)(1). (*See* 426 F.2d at 982–983; 396 F.2d at 713.) The mo-

tion before us, however, sought to stay the district court action in favor of a future arbitration.

5. Further details concerning the pleadings are supplied in the district court opinion, Danford v. Schwabacher (N.D.Cal.1972) 342 F.Supp. 65.

(15 U.S.C. § 78j(b)), which is neither "legal" nor "equitable," but rather is "statutory." [6]

■■■■ The dominant purpose test, suggested in Alexander v. Pacific Maritime Ass'n, *supra*, 332 F.2d at 267, and endorsed by Judge Friendly in Schine v. Schine (2d Cir. 1966) 367 F.2d 685, 688,[7] as a way of solving the *Enelow-Ettelson* characterization problem, is not useful in this case because we cannot determine from the face of Danford's complaint whether its legal features are stronger than its equitable components. We fashion a slightly different test of appealability to meet the difficulty posed by Danford's complaint: When a complaint is a homogenization of legal, equitable, and statutory elements, and it cannot fairly be said that either the legal or the equitable aspects predominate, the complaint shall be deemed equitable for the purpose of applying the *Enelow-Ettelson* rule.

We recognize that this test has its own inherent fiction. We nevertheless adopt it because it provides an answer to a problem that is otherwise unsolvable, an answer that comports with the policy of strictly limiting interlocutory appeals to those expressly authorized by statute. (*See, e. g.,* Baltimore Contractors, Inc. v. Bodinger, *supra,* 348 U.S. at 178, 181, 75 S.Ct. 249.) Since 1958 interlocutory arbitration orders have been reviewable in accordance with the procedures prescribed by 28 U.S.C. § 1292(b). Utilization of a test less demanding than the one we adopt today would weaken the discretionary scheme embodied in section 1292(b), add vitality to the anachronistic *Enelow-Ettelson* rule, and frustrate congressional policy against piecemeal appeals.

The appeal is dismissed.

6. *Cf.* American Safety Equip. Co. v. J. P Maguire Co. (2d Cir. 1968) 391 F.2d 821, 824; 9 Moore's Federal Practice ¶ 110.20 [3], at 243–44 n. 23.

7. Speaking of complaints that mix prayers for legal and equitable relief, Judge Friendly observed: "The best solution of an essentially insolvable problem appears to be the dominant purpose test, with any fair doubt being resolved against the claim that the action was predominantly one at law." (Concurring op'n.)