ALASCOM, INC., Plaintiff-Appellee,

v.

ITT NORTH ELECTRIC COMPANY, a Delaware corporation; et al., Defendants-Appellants.

ALASCOM, INC., Plaintiff-Appellee,

v.

ITT NORTH ELECTRIC COMPANY, a Delaware corporation; ITT North International Operations Division of ITT Telecommunications Corporation, a Delaware corporation; and Insurance Company of North America, a Pennsylvania corporation, Defendants-Appellants.

ALASCOM, INC., Plaintiff-Appellee,

v.

ITT NORTH ELECTRIC COMPANY, a Delaware corporation; ITT North International Operators Division of ITT Telecommunications Corporation, a Delaware corporation; ITT Telecommunications Corporation, a Delaware corporation; and Insurance Company of North America, a Pennsylvania corporation, Defendants-Appellants.

Nos. 83–3633, 83–3671 and 83–3754.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1983.

Decided March 9, 1984.

---

John M. Conway, Atkinson, Conway, Bell & Gagnon, Anchorage, Alaska, for plaintiff-appellee.

James M. Ringer, John M. Quitmeyer, Rogers & Wells, New York City, for defendants-appellants.

Before SNEED, NELSON and REINHARDT, Circuit Judges.

NELSON, Circuit Judge:

Appellants (collectively denominated as "North") challenge two district court orders, one granting a stay of arbitration, the other denying a stay of proceedings pending arbitration. Both orders were based on the district court's conclusion that none of North's claims was arbitrable under the arbitration provision of the parties' contract.

De novo examination of the arbitration clause indicates that the district court was correct in its finding of non-arbitrability. Therefore, it did not abuse its discretion in staying arbitration and refusing to stay its own proceedings. We affirm.

FACTS

The disputes in this case arise out of the performance of a contract under which North agreed to design and manufacture sophisticated telephone switching equipment for Alascom and several other telephone companies. The contract was negotiated with North by lawyers from New York Telephone Company and GTE Service, who acted on behalf of Alascom and the other United States companies.

For the purposes of this appeal, we need focus on only one contractual provision. Article 5, the arbitration clause, provides:

[Alascom] shall be the interpreter of the Contract but should [North] consider such interpretation to be at variance with the Contract Documents, it shall notify [Alascom] and [GTE] in writing before proceeding to carry out the work. Should [North] disagree with [Alascom's] or [GTE's] interpretation, [North] shall perform such work according to the interpre-

tation of [Alascom]. Any question of additional cost resulting to [North] from [Alascom's] interpretation shall be decided by arbitration.

Pursuant to this provision, North demanded arbitration of six claims against Alascom. (Of the nine claims asserted, Claims Three, Seven and Eight did not apply to Alascom.) The district court found that the claims did not fall within the arbitration provision. The court therefore granted Alascom's motion to stay the arbitration and denied North's cross-motion to stay the lawsuit commenced by Alascom. North appeals from these Orders.

## JURISDICTION ON APPEAL

1. *Order denying motion to stay litigation*

■ As a general rule, the "grant or denial of a stay of an action pending arbitration ... is not a 'final decision' appealable under 28 U.S.C. § 1291." *Danford v. Schwabacher*, 488 F.2d 454, 455 (9th Cir. 1973). However, 28 U.S.C. § 1292(a)(1) gives this court jurisdiction over appeals from interlocutory orders granting or refusing injunctions. The Supreme Court has determined that certain orders granting or denying a stay of litigation pending the outcome of proceedings in another forum are analogous to injunctions and are therefore appealable under § 1292(a)(1). *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). This circuit has interpreted the *Enelow-Ettelson* rule to allow an appeal from an order granting or denying a stay of proceedings pending arbitration if two conditions are met:

(a) The action in which the motion for a stay was made could have been maintained as an action at law before the merger of law and equity, and (b) the stay was sought to permit prior determi-

nation of an equitable defense or counterclaim.

*Danford*, 488 F.2d at 455.[1]

■ In this case the first prong of the test is satisfied since all six of North's claims were for money damages. The second prong is also satisfied because reliance upon an arbitration agreement to avoid immediate litigation is an equitable defense. *Id.* at 456, citing *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935). Therefore, we have jurisdiction over this Order.

2. *Order granting motion to stay arbitration*

■ An order granting or denying a stay of arbitration is also not a "final decision" within the meaning of 28 U.S.C. § 1291. Its appealability will depend on whether it falls within section 1292(a)(1), which renders appealable orders "granting ... [or] refusing ... injunctions."[2] This court has not yet specifically addressed the reviewability of an order *granting* a stay of arbitration.

In *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir.1968), this court found appealable an order *denying* a temporary injunction to stop arbitration. In reaching its conclusion, the court focused on the fact that the powers that a court must exercise to stay arbitration are equitable in nature:

Here the court was asked (and declined) affirmatively to interfere with proceedings in another forum; to exercise its equity powers to halt action of its litigants outside of its own court proceedings—the classic form of injunction.

*Id.* at 713. *A. & E. Plastik* dealt with the denial, but not the grant, of a motion to stay arbitration; under its reasoning, how-

---

1. The *Danford* court called *Enelow-Ettelson's* law-equity distinction "peculiar" and "a remnant from the jurisprudential attic." 488 F.2d at 455–56. The rule has not been abandoned by the Supreme Court, however, and remains the law of this circuit.

2. The *Enelow-Ettelson* rule does not apply here because the order is not one staying or refusing to stay proceedings in the district court.

ever, both a grant and a denial would be appealable.

We agree that the grant of a motion to stay arbitration is reviewable under section 1292(a)(1). We must question the reasoning underlying *A. & E. Plastik,* however, in light of *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1980), an intervening Supreme Court case. In *Carson,* the fact that an order declining to enter a proposed consent decree had the practical effect of "refusing" an "injunction" did not, without more, render the order appealable. Rather, the litigant also had to establish that the interlocutory order might have a "serious, perhaps irreparable, consequence," and that the order could be "effectually challenged" only by immediate appeal. *Id.* at 84, 101 S.Ct. at 996. *A. & E. Plastik's* literal characterization of a stay of arbitration as an "injunction," with the necessary implication that an order "granting" a stay is appealable, is therefore of doubtful value after *Carson.*

When applying the irreparable harm standard, most courts have held that an order denying a stay of arbitration is not appealable. Since arbitration awards are not self-executing, 9 U.S.C. § 9, if arbitration was improper, the court will not enforce the award. Thus, any harm caused by the denial of a stay will ordinarily be neither serious nor irreparable. *See, e.g., North Supply Co. v. Greater Development and Services Corp.,* 728 F.2d 363 (6th Cir.1984); *Stateside Machinery Co., Ltd. v. Alperin,* 526 F.2d 480, 483–84 (3d Cir.1975); *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183 (1st Cir.1972); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100 (2d Cir.1970). These cases also note the baneful effect that permitting appeals from orders denying stays would have upon one of the supposed advantages of arbitration—speed.

In contrast, where an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes. If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever. We find this consequence "serious, perhaps, irreparable" and "effectually challenged" only by immediate appeal. *See Buffler,* 466 F.2d at 698; *New England Power,* 456 F.2d at 186 (dictum). The order staying arbitration is therefore appealable.

## STANDARD OF REVIEW OF THE ORDERS

■ A denial, of a stay of proceedings pending arbitration will only be overturned when there has been an abuse of discretion. *Mediterranean Enterprises, Inc. v. Ssangyong,* 708 F.2d 1458 (9th Cir.1983).

■ An order staying arbitration receives the same amount of scrutiny as an order denying a stay of arbitration. *See Lummus Co. v. Commonwealth Oil Refining Co.,* 280 F.2d 915, 920 (1st Cir.1960). An order denying a stay of arbitration is reviewed for an abuse of discretion. *A. & E. Plastik,* 396 F.2d at 714.

In order to determine whether the district court abused its discretion, it is necessary to decide whether there were any claims to be arbitrated.

## STANDARD OF REVIEW OF ARBITRABILITY

■ A determination of the arbitrability of a dispute, like the interpretation of any contractual provision, is subject to *de novo* review. *Ssangyong,* 708 F.2d at 1462–63.

## APPLICABLE LAW

The subject matter of the parties' contract involves "commerce" and therefore falls within the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* While recognizing that federal policy favors the enforcement of arbitration agreements, this court has maintained that the issue of arbitrability is ultimately "to be determined by the contract entered into by the parties." *Ssangyong,* 708 F.2d at 1463. Therefore, the task before us is one of contractual interpretation.

## THE CLAUSE

Article 5 of the contract is not the standard broad arbitration provision recommended by the American Arbitration Asso-

ciation.[3] Rather, it appears to provide for arbitration only in those instances when (1) Alascom makes an interpretation of the contract; (2) North disagrees with such interpretation and so notifies Alascom in writing before proceeding to carry out the extra-contractual work; (3) North performs the work according to Alascom's interpretation; and (4) a question of additional costs arises due to this interpretation.

The district court found the purpose of the clause evident. Since "time was of the essence" to the parties, they agreed to avoid costly delays which might result from disagreement over what the contract required. The arbitration clause enabled Alascom, as purchaser, to interpret the contract to meet its particular needs. At a later date, the parties could submit to arbitration "additional costs" which North claimed resulted from the performance ordered by Alascom. Timely performance of the contract would not be jeopardized, since any dispute could be resolved without interrupting ongoing work.

## THE CLAIMS

Of all North's claims submitted for arbitration, only items (i) and (ii) of Claim Four could even arguably fall within the narrow reach of Article 5. Before reaching that claim, however, we discuss briefly Claims One, Two, Five and Six.

### Claims One, Two, Five & Six

Claims One and Two demand costs incurred by North in performing or preparing to perform under the contract terms, plus a profit of 10 percent. Claim One seeks recovery pursuant to Article 35 of the contract, which applies if Alascom terminated the contract for cause. Claim Two bases recovery on Article 14, which governs if Alascom terminated for convenience.[4]

Costs recoverable under either Article are not "additional costs" arising from work performed following a disputed contract interpretation. North is trying to arbitrate the total cost of performance by characterizing $28 million as "additional costs." However, for $28 million to constitute additional costs, North would have originally been required to perform no work at all.

North's fifth claim is for the unpaid contract price pursuant to Section 1–709 of the Uniform Commercial Code. That section allows recovery of the contract price when goods are so unique that resale at a reasonable price is unlikely. Again, since Article 5 encompasses only "additional costs," and not the entire contract price, this claim is not arbitrable.

Claim Six is for expectancy damages under Section 2–708 of the Uniform Commercial Code. North argues that it is entitled to lost profits of nearly $6 million. However, profits arising from full performance have no relation to work performed according to a disputed interpretation of the contract; they do not measure "additional costs."

### Claim Four

Item (iii) of this claim seeks unspecified damages because Alascom failed to perform and delayed performance. These alleged damages again do not constitute "additional costs" for purposes of Article 5.

Items (i) and (ii), however, appear on their face to be seeking "additional costs" arising from disputed contract interpretations. Specifically, North contends that the parties disagreed as to whether the contract could support Alascom's interpretation concerning six technical items. Although a document (Statement of Work) was drafted to reflect the modifications imposed on North, North insists that Alascom never agreed to pay these additional costs. Therefore, it argues, an arbitrable dispute as to additional cost remains.

The district court initially reserved judgment as to Claim Four because of the record's failure to reveal whether or not

---

**3.** The standard AAA clause provides:
 Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration . . . .

**4.** At this point, it is an open question who breached the contract. The resolution of that issue, however, has no bearing on this appeal.

Alascom had agreed to pay these additional costs. If the parties had modified the contract price to include additional work, the court noted, disputes relating to the modifications would not properly come within the arbitration provision. The court subsequently concluded that Alascom had agreed to pay an increased contract price and therefore found no arbitrable disputes.

■ In deeming Claim Four non-arbitrable, however, the district court failed to distinguish adequately among the six technical items for which additional costs were claimed. The first three of these items ("CUG," "switch size," "locals") were clearly dealt with in "change orders" which modified the contract specifications and increased the contract price to Alascom. Therefore, they are not subject to arbitration.

■ The last three items ("tone card," "configuration change documentation," "delay") are more troublesome. They were never the subject of "change orders" because, Alascom contends, North never notified Alascom that it considered these matters either in dispute or as meriting additional costs. Alascom concludes, therefore, that arbitration may not be enforced because Article 5 required North to inform Alascom in writing of its disagreement with Alascom's interpretation before proceeding with the disputed work.

North cites *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), for the proposition that any dispute regarding notice is a procedural question for the arbitrators, not the court. In that case, a labor union had not filed notice of its grievance within the required four-week period. The court in *Bell Canada v. ITT Telecommunications Corp.,* 563 F.Supp. 636 (S.D.N.Y.1983), construing an arbitration provision nearly identical to Article 5 in a contract between North and Bell Canada, did find the notice requirement to be procedural. The court felt that its conclusion was compelled by *Rochester Telephone Corp. v. Communication Workers of America,* 340 F.2d 237 (2d Cir.1965), in which the question of compliance with a

60-day notice-of-intention-to-arbitrate requirement was left to the arbitrators.

We believe that the perfunctory application of labor grievance cases to this commercial dispute is inappropriate for two reasons. First, it ignores the fact that the arbitration clause here was the result of lengthy, detailed negotiations between two sophisticated corporations. *John Wiley, supra,* emphasized that a collective bargaining agreement is "not an ordinary contract" nor "in any real sense the simple product of a consensual relationship." 376 U.S. at 550, 84 S.Ct. at 914. Arbitration in the labor context is "the substitute for industrial strife" and "part and parcel of the collective bargaining process itself." *Id.* at 549, 84 S.Ct. at 914. Commercial arbitration, on the other hand, is solely the product of contractual agreement.

Second, we find the notice requirement here more than a mere procedural prerequisite to arbitration. Only if Alascom ordered North to proceed in accordance with Alascom's interpretation of the contract while North maintained its disagreement with Alascom would a claim be arbitrable. If, as here, North never notified Alascom that it disagreed with the latter's interpretation, Alascom would have no idea that it would subsequently be liable for additional costs. Clearly, the notice requirement ensured that Alascom would have an opportunity to change its interpretation of the contract before North carried out any disputed and potentially costly work. In all cases cited by North and in *Bell Canada, supra,* notice was required within a specified period *after* the events giving rise to liability had occurred. Here, however, notice of a disputed interpretation was required *before* any additional liability was incurred. Because notice was the central protective feature of Article 5, to characterize it as a mere procedural formality would undercut the essence of the clause. These claims, therefore, are also not arbitrable.

## CONCLUSION

None of North's claims is arbitrable. Therefore, the district court did not abuse

its discretion in staying arbitration and refusing to stay its own proceedings.

AFFIRMED.