**CONSTRUCTION LABORERS PENSION TRUST,**
**Plaintiff-Appellee,**

v.

**CEN–VI–RO CONCRETE PIPE & PRODUCTS COMPANY, INC.,**
**Defendant-Appellant.**

**No. 84–5891.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1985.

Decided Nov. 21, 1985.

James P. Watson, Everitt G. Beers, Los Angeles, Cal., for plaintiff-appellee.

Dennis R. Murphy, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant-appellant.

Before FLETCHER, PREGERSON, and HALL, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Concrete Pipe & Products Co. of California (CP & P) challenges a district court order that it submit to arbitration under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001a, 1322a–1461 (1982 & Supp. I 1983) (MPPAA), to determine its date of withdrawal from appellee Construction Laborers Pension Trust (Trust). The district court, in a partial grant of summary judgment for the Trust, ordered the parties to arbitration, denied summary judgment on several remaining constitutional issues without prejudice to their renewal after arbitration, and retained jurisdiction over the action to review the arbitrator's decision. Because the order to arbitration is not a final order and because it did not effectively deny CP & P injunctive relief so as to create a risk of irreparable injury that can only be effectually challenged by im-

mediate appeal, we dismiss the appeal for lack of jurisdiction.

## FACTS

The MPPAA regulates employer withdrawals from multiemployer benefit plans. Under the statute, an employer who withdraws from a plan on or after April 29, 1980, must pay a share of the plan's unfunded vested liability, calculated by the plan's sponsor.[1] If an employer disputes the fact or amount of its withdrawal liability, section 1401 provides that the parties shall proceed to arbitration.[2] The arbitrator's decision is reviewable by a district court,[3] subject to a presumption that the arbitrator's findings of fact are correct.[4]

In November 1976, CP & P purchased a plant for the manufacture of concrete pipe in Shafter, California, from Cen-Vi-Ro Concrete Pipe & Products Company. CP & P honored the terms of the collective bargaining agreement between the former owner and the Southern California District Council of Laborers (Union). The agreement required the owner of the plant to contribute to the Trust. Two years later, in November of 1978, CP & P signed a new agreement with the Union which also required contributions to the Trust, and which provided for automatic renewal unless the parties gave notice before June 30, 1981, or before June 30 of each year thereafter.

On August 17, 1979, CP & P ceased production of concrete pipe at the Shafter plant. CP & P laid off employees, stopped purchasing materials, and removed machin-

---

1. 29 U.S.C. § 1383(a) (1982) provides that "a complete withdrawal from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

2. 29 U.S.C. § 1401(a)(1) (1982) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."

3. 29 U.S.C. § 1401(b)(2) (1982) provides that "[u]pon completion of the arbitration proceed-

ings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award."

4. 29 U.S.C. § 1401(c) (1982) provides that "[i]n any proceeding under subsection (b) of this section, there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct."

ery for shipment to its Sacramento plant. From October 1979 to November 1981, two full-time employees worked at the Shafter plant as caretakers. CP & P did not contribute to the Trust for these employees. Its last contributions to the Trust were in May 1981, when it employed one laborer for forty hours.

In the spring of 1981, the Union and CP & P both gave notice of their desire to renegotiate their collective bargaining agreement. Negotiations followed in October and November. In November, CP & P reopened the Shafter plant, hiring employees in the categories covered by the collective bargaining agreement but failing to make any contribution to the Trust for those employees. On November 30, 1981, CP & P gave notice of an impasse in negotiations and withdrew recognition of the Union. The effective termination date of the collective bargaining agreement was December 15, 1981.

On January 20, 1982, the Trust sent CP & P notice that CP & P's liability under the MPPAA for its share of the pension plan's unfunded vested benefits totaled $268,-168.81. The Trust calculated that sum by setting CP & P's withdrawal date as December 15, 1981, the date that CP & P ended its collective bargaining agreement and thus "permanently cease[d] to have an obligation to contribute under the plan...." 29 U.S.C. § 1383(a)(1) (1982). CP & P refused to pay the assessed liability, contending that it withdrew from the Trust when it ceased production of pipe at the Shafter Plant on August 17, 1979, and that even though the plant eventually reopened, the closure was "permanent" because CP & P intended it to last indefinitely. Arguing that more than seven months before the MPPAA's effective date of April 29, 1980, it "permanently cease[d] all covered operations under the plan," 29 U.S.C. § 1383(a)(2) (1982), CP & P maintains that it owes no withdrawal liability at all.

On October 5, 1982, the Trust filed a complaint in the District Court for the Central District of California against CP & P seeking $268,168.81 in liability under the MPPAA for CP & P's withdrawal from the Trust. One day later, on October 6, 1982, CP & P filed an action in the District Court for the Eastern District of California, asking for declaratory and injunctive relief against the Trust, asserting that CP & P had withdrawn from the Trust prior to the effective date of the MPPAA, and challenging the constitutionality of the MPPAA. CP & P's Eastern District action was transferred to the Central District and was consolidated with the Trust's action.

After discovery, the parties filed an extensive stipulation of facts, and filed cross-motions for summary judgment on the issues of CP & P's date of withdrawal and the constitutionality of the MPPAA. On April 4, 1984, the district court issued an order upholding the constitutionality of the mandatory arbitration provision of the MPPAA and ordering the parties to submit to arbitration to resolve the issue whether CP & P withdrew from the Trust before or after the effective date of the MPPAA. The court denied the parties' summary judgment motions on the remaining constitutional issues without prejudice to their renewal after arbitration, and expressly retained jurisdiction of the consolidated action to review the arbitrator's decision.

CP & P appeals the district court's order that the parties submit to arbitration, contending that if, as it alleges, it withdrew from the Trust before the MPPAA became effective, it is not subject to any of the terms of the MPPAA, including the provision in 29 U.S.C. § 1401(a)(1) (1982) that disputes arising under the MPPAA shall be resolved through arbitration. In general, CP & P contends that the threshold issue of withdrawal is not arbitrable.

Because we conclude that we are without jurisdiction over the appeal, we do not reach the substantive issue whether the district court erred in ordering CP & P to submit to arbitration under the MPPAA without first deciding whether CP & P is subject to the terms of the statute.

### JURISDICTION UNDER 28 U.S.C. § 1292(a)(1)

#### I. The *Enelow-Ettelson* Doctrine

CP & P first contends that the district court's order staying the judicial proceed-

ings pending arbitration is appealable under 28 U.S.C. § 1292(a)(1) (1982).[5] Under section 1292(a)(1) we have jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...." The Supreme Court has held that a court's order granting a stay of its own proceedings pending the outcome of proceedings in another forum is analogous to an injunction and is appealable under section 1292(a)(1). *Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 381–83, 55 S.Ct. 310, 310–12, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *see also Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

■ The *Enelow-Ettelson* doctrine construes a stay as an injunction if: (1) the original cause of action could have been maintained only at law before the merger of law and equity, and (2) the stay is sought to permit the interposition of an equitable defense or counterclaim. *Salinas Cooling Co. v. Fresh Fruit and Vegetable Workers, Local P–78–A,* 743 F.2d 705, 706–07 (9th Cir.1984); *Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473, 1476 (9th Cir.1984); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1462 (9th Cir.1983); *Brannon v.*

*Warn Brothers, Inc.,* 508 F.2d 115, 118 (9th Cir.1974); *Danford v. Schwabacher,* 488 F.2d 454, 455 (9th Cir.1973). We examine each of these requirements in turn.

■ The Trust's complaint meets the first prong of the test because it asks primarily for money damages for CP & P's withdrawal. The equitable relief it requests is only that which "to the court shall seem necessary for the enforcement of defendant's payment obligation." Under either of the tests used to determine whether a suit is equitable or legal, the "historical" test or the "dominant purpose" test, this case may be characterized as "legal." *See Mediterranean Enterprises,* 708 F.2d at 1462 (dominant purpose test); *Salinas Cooling,* 743 F.2d at 706–07 (historical test); *see also Langley v. Colonial Leasing Co.,* 707 F.2d 1, 6 (1st Cir.1983) (discussing both); *USM Corp. v. GKN Fasteners, Ltd.,* 574 F.2d 17, 21 (1st Cir.1978) (same). The Trust's action for withdrawal liability is analogous to a contract action for liquidated damages, which historically could be maintained only at law.[6] *Alascom,* 727 F.2d at 1421 (claim for money damages is action at law); *Wren,* 654 F.2d at 533 (breach of contract actions are actions at law); *Bear v. Hayden, Stone, Inc.,* 526 F.2d 734, 735 (9th Cir.1975) (per curiam) (contract action is action at law). And because the equitable relief the Trust requests is purely incidental to the legal claim for money damages, the predominant

---

**5.** "As a general rule, the 'grant or denial of a stay of an action pending arbitration ... is not a "final decision" appealable under 28 U.S.C. § 1291.'" *Alascom, Inc. v. ITT North Elec. Co.,* 727 F.2d 1419, 1421 (9th Cir.1984) (quoting *Danford v. Schwabacher,* 488 F.2d 454, 455 (9th Cir.1973)).

The Trust's motion for summary judgment in this case asked the district court to uphold the constitutionality of the MPPAA on a number of counts and to order the parties to arbitration. Because the Trust sought other relief in addition to an order directing arbitration, and because the district court retained jurisdiction over the unresolved constitutional claims, the order directing arbitration is not a final order, and section 1291 provides no basis for jurisdiction over CP & P's appeal. *See Wren v. Sletten Constr. Co.,* 654 F.2d 529, 532 (9th Cir.1981) (per curiam) (district court order requiring arbitra-

tion not an appealable final decision under 28 U.S.C. § 1291 where "[p]laintiffs did not bring this action to compel arbitration" and "arbitration such as the district court ordered here cannot proceed to a final and enforceable result without further judicial action.").

**6.** The pre-merger status of the Trust's complaint is somewhat unclear. Its action for withdrawal liability under the MPPAA is probably neither legal nor equitable, but statutory. *Compare Brannon,* 508 F.2d at 118–19 (9th Cir.1974) (characterizing plaintiff's action as "predominantly an action at law" despite existence of statutory claims) *with Wren,* 654 F.2d at 533 (9th Cir.1981) (per curiam) (action for violation of FLSA and Montana Wage Claims Act characterized as legal without discussion of statutory nature of claims).

purpose of the action is not equitable but legal. *See Brannon,* 508 F.2d at 119. The Trust's suit therefore satisfies the first prong of *Enelow-Ettelson.*

 The arbitration order does not satisfy the second prong of *Enelow-Ettelson,* however, because the stay was not sought to permit the interposition of an equitable defense. Several decisions of this court have held that reliance on an arbitration agreement to avoid immediate litigation constitutes an equitable defense. *Mediterranean Enterprises,* 708 F.2d at 1462; *Brannon,* 508 F.2d at 118; *Danford,* 488 F.2d at 456. The district court's order, however, was not issued to allow CP & P to raise the equitable defense of arbitration. Instead, the order granted the *plaintiff's* (the Trust's) request in its motion for summary judgment and in its opposition to CP & P's motion for summary judgment for an order requiring the parties to arbitrate. To find that a prayer for arbitration in a plaintiff's motion for summary judgment constitutes the interposition of an equitable defense would require an extremely permissive interpretation of *Enelow-Ettelson.* In light of the presumption against allowing piecemeal interlocutory appeals, *see Baltimore Contractors,* 348 U.S. at 181–82, 75 S.Ct. at 252–53; *Danford,* 488 F.2d at 457, we decline to adopt such an interpretation, and find that we lack jurisdiction under the *Enelow-Ettelson* doctrine.[7]

### II. Appealability Under *Carson v. American Brands*

 Alternatively, CP & P argues that the order is appealable under *Carson v.*

*American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), because it has the practical effect of denying an injunction. In its original complaint filed in the District Court for the Eastern District of California, CP & P asked for declaratory and injunctive relief against the Trust, including an injunction prohibiting the Trust from "taking any action whatsoever" to initiate arbitration proceedings as provided by 29 U.S.C. § 1401.[8] CP & P's Eastern District action was later consolidated with the Trust's action for withdrawal liability in the Central District. CP & P's answer to the Trust's complaint for withdrawal liability included a prayer for injunctive relief identical to that prayed for in its complaint. CP & P did not renew its request for an injunction at any time after its answer to the Trust's complaint. At the time the district court ruled on the cross motions for summary judgment, it had before it no express request for an injunction, and it never expressly ruled on such a request. CP & P argues, however, that the district court's order to arbitrate has the practical effect of refusing CP & P's long-dormant request for injunctive relief, and thus this court has jurisdiction to review the order under section 1292(a)(1).

If an express request for an injunction had been before the district court, and if the district court had expressly ruled on such a request when it granted partial summary judgment for the Trust, this court's jurisdiction under 28 U.S.C. § 1292(a)(1) would be clear.[9] However, when an inter-

---

**7.** Even characterizing CP & P as the "plaintiff" in this consolidated action does not change the result under *Enelow-Ettelson.* If the Trust were characterized as the defendant, then its request for arbitration would be an equitable defense to CP & P's request for an injunction, satisfying the second prong of *Enelow-Ettelson.* However, CP & P's suit would not satisfy the first prong of the test, *viz.,* that the suit be an action at law. CP & P sought an injunction (equitable) and a declaratory judgment (statutory), but did not request any specifically legal relief. Because its complaint is a "homogenization of ... equitable ... and statutory elements" the complaint would be deemed equitable for the purposes of the test. *Danford,* 488 F.2d at 457 (when neither legal

nor equitable aspects predominate, a complaint is equitable for the purpose of *Enelow-Ettelson* ).

**8.** CP & P's complaint asked that the district court "[e]njoin, *pendente lite,* the TRUST ... from taking any action whatsoever prescribed by ... [29 U.S.C. §§ 1399 and 1401] to prosecute, enforce, or collect its withdrawal liability claim or to penalize CP & P for non-compliance with the TRUST's demand for payment thereof and tolling the time to demand arbitration."

**9.** *See Tokarcik v. Forest Hills School Dist.,* 665 F.2d 443, 447 (3d Cir.1981) ("Notwithstanding the *Carson* qualification that interlocutory or-

locutory order of a district court does not expressly rule on a specific request for injunctive relief, but merely has the effect of "granting, continuing, modifying, refusing or dissolving" an injunction, 28 U.S.C. § 1292(a)(1), the case must meet the requirements set forth in *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981).

In *Carson,* the Supreme Court held that "a litigant must show more than that the order has the practical effect of refusing an injunction" for an interlocutory order to be appealable under section 1292(a)(1). 450 U.S. at 84, 101 S.Ct. at 996. "Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Id.; see also Sentry Life Insurance Co. v. Borad,* 759 F.2d 695, 698 (9th Cir.1985).

■ In *Alascom, Inc. v. ITT North Electric Co.,* 727 F.2d 1419, 1422 (9th Cir.1984), this court held that the grant of a motion to stay arbitration is appealable under section 1292(a)(1). "If [a] party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever. We find this consequence 'serious, perhaps, irreparable' and 'effectually challenged' only by immediate appeal." *Id.* at 1422. *Alascom* suggested, however, that the denial of a stay of arbitration is not similarly appealable because "arbitration awards are not self-executing" and, therefore, "any harm caused by the denial of a stay will ordinarily be neither serious nor irreparable." [10] *Id.* We agree with *Alascom* that, under ordinary circumstances, a denial of a stay of arbitration does not threaten "serious, perhaps irreparable" consequences and so is not immediately appealable under 28 U.S.C. § 1292(a)(1).

■ CP & P advances two arguments to show that the order to arbitrate in the instant case does have serious consequences. First, under the MPPAA a district court reviewing an arbitrator's decision must give the arbitrator's findings of fact "a presumption [of correctness], rebuttable only by a clear preponderance of the evidence...." 29 U.S.C. § 1401(c). CP & P alleges that an arbitrator's decision that CP & P withdrew after the statute's effective date will deprive CP & P of de novo review of that factual question in the district court. We cannot find that section 1401(c)'s required presumption of correctness constitutes the "serious, perhaps irreparable" harm *Carson* requires. Arbitrator's awards in other contexts generally receive deferential review in the district courts, yet have not been held to impose irreparable harm on the parties. *See Sentry Life Insurance,* 759 F.2d at 698 (review under the Arbitration Act, 9 U.S.C. §§ 9–10 (1982)); *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1275 (9th Cir. 1984) (review of labor arbitrator's decision), *cert. denied,* —— U.S. ——, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985).

In any event, it is doubtful that section 1401(c)'s presumption of correctness seriously affects the parties' right to review in a district court. The Fourth Circuit recently rejected an argument that the compulsory arbitration provisions of the MPPAA violated due process because the district court's review was essentially meaningless in light of 29 U.S.C. § 1401(c). *Republic Industries, Inc. v. Teamsters Joint Council No. 83,* 718 F.2d 628, 639–41 (4th Cir.

---

ders pose 'serious perhaps irreparable consequences,' the appealability of a routine interlocutory injunctive order remains unquestioned."), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982).

**10.** In *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710 (9th Cir.1968), this court held that an order denying a temporary injunction enjoining arbitration was appealable. In *A. & E. Plastik,* however, the district court had before it an express request for an injunction against arbitration, which request it expressly denied. 396 F.2d at 713. The presence of an express request for an injunction distinguishes *A & E Plastik* from *Alascom* and *Carson,* and it is therefore doubtful whether the *Carson* criteria must even be applied in a situation like that in *A. & E. Plastik.* But see *Alascom,* 727 F.2d at 1422 (questioning *A. & E. Plastik*'s validity after *Carson* ).

1983), *cert. denied,* — U.S. —, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The Fourth Circuit concluded that section 1401(c) does "little more than allocate the burden of proof to the challenger and direct that issues which are close be resolved in favor of the nonjudicial dispute resolver." [11] *Id.* at 641; *accord Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1511 (D.C. Cir.1984); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 854–55 (2d Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247, 1277 (7th Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

■ CP & P's second basis for alleging "serious, perhaps irreparable" consequences from the order to arbitrate in this case is that arbitration, which usually has the "advantages of ... speed and economy," *Alascom,* 727 F.2d at 1422, will actually result in delay. Because the Trust refused CP & P's request to bifurcate arbitration and to allow the issue of coverage under the MPPAA to be determined before arbitrating the amount of withdrawal liability, CP & P will have to litigate both issues in the same arbitration proceeding. Should an arbitrator find that CP & P is subject to the MPPAA, CP & P will have to arbitrate the more complex issue of its withdrawal liability before appealing to a district court the arbitrator's initial decision on CP & P's withdrawal date.

We find no serious or irreparable harm under these circumstances. The expense and delay of such a process should be compared to the expense and delay if we allowed an immediate appeal. *See Sentry Life Insurance,* 759 F.2d at 698; *cf. Shearson Loeb Rhoades, Inc. v. Much,* 754 F.2d 773, 778 (7th Cir.1985) (concluding district court's remand to arbitrator to calculate damages would impose shorter delay than allowing immediate appeal). Of course, should the arbitrator find that CP & P

withdrew before the effective date of the MPPAA, there will be no need to challenge to the amount of withdrawal liability at the arbitration hearing, and CP & P will have benefitted from the speed and economy of arbitration. If the arbitrator finds that CP & P withdrew after the MPPAA's effective date and then assesses the amount of CP & P's withdrawal liability, however, CP & P will be able to challenge both findings in a single appeal to the district court. If arbitration were bifurcated, CP & P would face a far more lengthy delay. CP & P would first have to arbitrate the issue of its withdrawal date, appeal an adverse finding to the district court, and, in turn, to this court. If this court affirmed the arbitrator's decision, it would send CP & P back to arbitration to determine the *amount* of liability. If CP & P then wished to appeal the arbitrator's findings on the amount of liability, it would again face the slow process of review and appeal in the federal courts.

In addition, denying CP & P immediate appeal will not foreclose the possibility of appellate review of the issues CP & P raises. CP & P's argument that the date of withdrawal is not arbitrable will not be lost because the parties must submit to arbitration, nor will the district court's required deference to the arbitrator's findings hinder the assertion of that argument on review in a district court. If CP & P is correct that the date of withdrawal is not arbitrable, the factual findings of the arbitrator will be a nullity and the district court will have nothing to which it must pay deference.

Because we find that the district court's order to arbitrate does not satisfy the requirements of the *Enelow-Ettelson* doctrine and does not represent the "serious, perhaps irreparable" consequences "effectually challenged" only by immediate appeal, as *Carson v. American Brands* requires, we find that we do not have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

The appeal is DISMISSED.

---

**11.** Of course, if the arbitrator finds that CP & P withdrew from the Trust *before* the effective date of the MPPAA, that presumption will actually work in CP & P's favor if the Trust seeks review in the district court.