**MESQUITE LAKE ASSOCIATES, a California Limited Partnership, Plaintiff,**

v.

**LURGI CORPORATION, a Delaware Corporation, Lurgi GmbH, a German Corporation, Does 1 through 20, inclusive, Defendants.**

**No. C–90–2794–JPV–ARB.**

United States District Court, N.D. California.

Jan. 2, 1991.

Jon T. Anderson, Kent W. Lindsay, Joshua B. Baker, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiff.

Fred G. Bennett, Cheryl D. Justice, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants.

**OPINION AND ORDER DENYING DE-FENDANTS' PETITION TO COMPEL ARBITRATION AND DENYING DE-FENDANTS' MOTION TO STAY ALL PROCEEDINGS PENDING ARBI-TRATION**

VUKASIN, District Judge.

## INTRODUCTION

Defendants' Petition to Compel Arbitration and Motion to Stay All Proceedings Pending Arbitration were scheduled to be heard on December 13, 1990. After a review of the briefs, this court considered it appropriate to submit the petition and motion on the pleadings pursuant to Local Rule 220-1, and now DENIES both the petition and the motion.

## BACKGROUND

Plaintiff Mesquite Lake Associates ("Mesquite") contracted with defendant Lurgi Corporation[1] for the construction in Imperial County of an electrical power generation plant fired by manure. The contract was entered into on December 31, 1984, and the plant is now in operation, but the course of the parties' relationship under the contract was not altogether amicable. A panoply of disputes has arisen, essentially focusing on whether the plant meets the terms of the contract, and On May 30, 1990, Mesquite filed a complaint in the Superior Court of Marin County, alleging seven breach of contract and tort causes of action. On September 28, 1990, Lurgi removed the action to this court under 28 U.S.C. §§ 1332 and 1441(b), and on October 3, 1990, Lurgi filed the Petition to Compel Arbitration and Motion to Stay All Proceedings which are the subjects of this Opinion and Order.

Lurgi's Petition and Motion are based on an arbitration clause contained in Article 13 of the contract. Article 13 provides, in relevant part, that "any controversy or dispute between the Parties concerning this Agreement and specifically subject to resolution pursuant to this Article shall be subject to arbitration ..." Three other clauses in the contract delineate the areas of dispute which are "specifically subject to resolution" by arbitration under Article 13. Section 4.2.1.2 provides, in relevant part: "The affect [sic] of a Change Order on Contract Price, Scheduled Completion Date or Facility performance shall ... be resolved pursuant to Article 13." Section 5.3 provides, in relevant part, that "any dispute about any amount invoiced by Contractor ... shall be treated in accordance with ARTICLE 13 of this Agreement." Finally, amended section 16.3.2.2 provides that when Lurgi attempts to cure alleged "Under-Performance," and a specified "Technical Committee" fails unanimously to approve the proposed curative action, then Lurgi may submit the dispute to arbitration under Article 13.

## DISCUSSION

This court is empowered to make an initial determination whether the disputes at issue in this law suit "arguably fall within the narrow reach" of the contract's arbitration clause. *Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1423 (9th Cir.1984). Lurgi correctly argues that federal and California law permit an arbitral panel to determine its own jurisdiction, and that disputes which are arguably subject to arbitration should be directed to the arbitral panel for such a determination.[2] These well settled propositions need not be so expansively read, however, as to suggest that all disputes which involve a contract containing any arbitration clause must be submitted to an arbitrator before a traditional court action may be prosecuted.

---

1. Defendant Lurgi Corporation is owned by defendant Lurgi GmbH, which also served as guarantor of performance on the contract. Except where otherwise noted, the two entities shall be referred to hereinafter as "Lurgi."

2. Since the result under either set of laws is identical, this court need not determine which applies. *See Alascom, supra; United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); 9 U.S.C. § 4; Cal.C.Civ.P. § 1297.161 ("tribunal *may* rule on its own jurisdiction [emphasis added]").

Imagine a contract for construction of a one room log cabin. The parties agreed that disputes over the glass used in the windows would be subject to arbitration. If the owner were to sue the builder on broad breach of contract and tort causes of action, alleging drafty walls, a leaky roof, and a complete lack of wooden flooring, it would defy logic to force the owner to submit the entire dispute to arbitration, when all he had agreed to arbitrate was disputes over window glass. The dispute between Mesquite and Lurgi is nothing more than an intricately detailed version of this simple hypothetical situation.

■ The claims asserted by Mesquite in its complaint do not fall within the contract's narrow definition of arbitrable issues. Lurgi's argument, *in nuke*, is that because the complaint addresses Lurgi's overall performance under the contract, it implicates both Lurgi's "final invoice" and liability for "underperformance," and that therefore the arbitration clause applies. But the assertion by one party that there is an arbitrable dispute does not make one exist. *Rosenthal v. Emanual, Deetjen & Co.*, 516 F.2d 325, 327 (2d Cir.1975). The fallacy of Lurgi's argument is that it gives over expansive readings to the three extremely narrow arbitration clause references in the contract. Had the parties intended to subject all disputes about the adequacy of performance under the contract to arbitration, they could, and would, have clearly manifested that intent in Article 13 of the contract.

Lurgi's assertion that this litigation encompasses the compensation owing Lurgi for constructing the plant, and thus falls under the "invoice" category in Article 5, is simply too general. Were this argument to prevail, virtually any dispute under the contract would fall within Article 5. As already indicated, if that were the intent of the parties, then the arbitration clause would by its own terms have been far broader in scope.

Under the "underperformance" rubric, Lurgi argues that Mesquite should be estopped from arguing that the terms of the arbitration reference in Article 16 have not

been met, since Mesquite's own actions have made impossible the convening of a "Technical Committee." Be that as it may, the arbitration reference in Article 16 only takes effect upon the conclusion of such a committee's work, so Lurgi cannot rely on Article 16 to place this dispute within Article 13's arbitration clause.

Mesquite concedes that there may be several arbitrable claims falling under the "change order" category of Article A of the contract. Whether or not this is the case, those issues are of only limited potential impact on this litigation. The state of the pleadings at this early juncture is not sufficient to enable this court to carve out such issues for reference to an arbitral tribunal. If this situation should change, it appears unlikely that a stay of these proceedings would be necessary during the pendency of an arbitration on the limited "change order" issues.

Furthermore, this is not a case where the court must summarily proceed to trial on the issue of arbitrability. *Cf. Tehran–Berkeley Civ. Eng. v. Tippets–Abbett*, 816 F.2d 864, 869 (2d Cir.1987). The parties' dispute in this Application and Motion does not go to facts, since the existence of the contractual clauses is not disputed, and the nature of the disputes is easily discerned from the face of the complaint. The clauses are clear in their definition of the three discrete areas of dispute subject to arbitration, and the complaint does not fall within those three areas. *See Alascom*, 727 F.2d at 1423.

Finally, the cases cited by Lurgi in support of allowing the hypothetical arbitrators in this case to take the first crack at determining their own jurisdiction are readily distinguishable, as they involve arbitration clauses which applied to all disputes between the parties arising from the agreements in question, far broader than that at issue herein. *See Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d

765 (1983); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Genesco, Inc. v. T. Kakiuchi & Co., Inc.*, 815 F.2d 840 (2d Cir.1987); *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447 (9th Cir.1986); *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023 (9th Cir.1986); *Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334 (5th Cir.1984); *McAllister Bros., Inc. v. A & S Trans. Co.*, 621 F.2d 519 (2d Cir.1980); *National R.R. Passenger Corp. v. Mo. Pacific Railroad Co.*, 501 F.2d 423 (8th Cir. 1974); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal.3d 312, 197 Cal.Rptr. 581, 673 P.2d 251 (1983); *Izzi v. Mesquite Country Club*, 186 Cal.App.3d 1309, 231 Cal.Rptr. 315 (1986); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal.App.3d 632, 223 Cal. Rptr. 838 (1986). In the one exception to this principle, referral to arbitration was held to be correct where certain issues not explicitly mentioned in the arbitration clause were merely "sub-issues" of the primary dispute, which clearly concerned the subject to which the arbitration clause applied. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983).

## CONCLUSION

Although both federal and California law express a preference for allowing parties to resolve their disputes through arbitration if they so choose, this preference need not be read as a mandate to eviscerate the jurisdiction of the federal and state courts. If disputes arising from contracts with even the most narrow of arbitration clauses were referred initially to arbitration, the eventual effect would be an incentive not to include such clauses in contracts, even where one portion of a contract was particularly suited to arbitration. This would work against the policy favoring arbitration as a dispute resolution method. Where it is apparent from the terms of the complaint and arbitration clause that a dispute is not subject to arbitration, a court need not slavishly refer the dispute to an arbitral tribunal to make such a determination.

## ORDER

In accordance with the foregoing discussion, defendants Lurgi Corporation and Lurgi GmbH's Petition to Compel Arbitration and Motion to Stay All Proceedings Pending Arbitration are HEREBY DENIED.

IT IS SO ORDERED.