**MEDITERRANEAN ENTERPRISES, INC., a California corporation, Plaintiff-Appellee,**

v.

**SSANGYONG CORPORATION, a Korean corporation, Defendant,**

**Ssangyong Construction Company, Ltd., a Korean corporation, Defendant-Appellant.**

**No. 82–5779.**

United States Court of Appeals, Ninth Circuit.

Argued April 7, 1983.

Submitted April 12, 1983.

Decided June 23, 1983.

Gary Phillips, Los Angeles, Cal., for plaintiff-appellee.

Donald F. Woods, Jr., Los Angeles, Cal., for defendant-appellant.

Before ANDERSON and NELSON, Circuit Judges, and WILLIAMS,* District Judge.

NELSON, Circuit Judge:

Defendant-appellant Ssangyong Construction Co. (Ssangyong) appeals the district court's interlocutory order staying the action and sending to arbitration certain issues raised in a complaint filed by plaintiff-appellee Mediterranean Enterprises, Inc. (MEI). Ssangyong contends that the district court improperly interpreted the scope of the arbitration clause in a contract between the parties. We affirm the district court's order.

FACTUAL AND PROCEDURAL BACKGROUND

MEI, a California corporation, provides engineering services for modular housing projects in developing countries. In May, 1978, MEI was invited by the Saudi Arabian Royal Commission to bid on certain construction projects in Saudi Arabia. In connection with this invitation, MEI contacted Ssangyong, a Korean contractor.

---

* The Honorable Spencer M. Williams, United States District Judge for the Northern District of California, sitting by designation.

On September 9, 1978, in Los Angeles, MEI and Ssangyong signed a "Preliminary Agreement for Formation of a Joint Venture" (Agreement). The arbitration clause in the Agreement provides as follows:

Any disputes arising hereunder or following the formation of joint venture shall be settled through binding arbitration pursuant to the Korean-U.S. Arbitration Agreement, with arbitration to take place in Seoul, Korea.

Subsequently, MEI and Ssangyong entered into an Agency Agreement dated October 21, 1978, with Trac Enterprises, providing that Trac would serve as the agent of the joint venture in Saudi Arabia.

The contemplated MEI—Ssangyong joint venture was never actually formed. In its complaint, MEI alleges that Ssangyong used the Agreement merely to gain access to the Saudi projects, and wrongfully commenced the projects in association with Trac (named as a defendant below) rather than with MEI. Ssangyong claims that no breach occurred, and that its non-performance of the Agreement was due to its inability to obtain certain Korean government approvals required by paragraph 20 of the Agreement.[1]

On November 5, 1980, MEI commenced this action in district court. The complaint contains six counts against Ssangyong: breach of contract and breach of fiduciary duty (counts 1, 2 and 4), inducing and conspiracy to induce breach of contract [the Trac Agency Agreement] (count 7), quantum meruit (count 8), and conversion (count 9).[2]

On November 9, 1981, the district court rejected MEI's contention that Ssangyong had fraudulently inserted the words "arising hereunder or" in the arbitration clause, and ordered Ssangyong to prepare findings of fact and conclusions of law on all of the issues relating to its motion to stay the proceedings pending arbitration. Ssangyong submitted its proposed findings and conclusions, which the court signed shortly thereafter. On December 1, 1981, the court held a hearing on the scope of the arbitration clause and took the matter under submission.

On July 19, 1982, the court entered its order amending one earlier conclusion of law, stating:

The issues raised by Counts 1, 2 and 4 of Mediterranean Enterprises, Inc.'s Complaint against Ssangyong Construction Co., Ltd. are found to be arbitrable and are ordered to arbitration between said parties pursuant to paragraph 16 of the Preliminary Agreement of September 9, 1978 between Mediterranean Enterprises, Inc. and Ssangyong Construction Co., Ltd.

The order also provides that "the action is stayed pending receipt by this court of the results of the arbitration between [MEI] and [Ssangyong]." It is from this order that Ssangyong appeals.

## ISSUES PRESENTED

I. Does this court have jurisdiction over the district court's interlocutory order?

II. What is the scope of the arbitration clause?

III. Did the district court abuse its discretion in staying the action pending arbitration?

## ANALYSIS

### I. Jurisdiction

■ This court has jurisdiction over the district court's order. As a general rule, the "grant or denial of a stay of an action pending arbitration . . . is not a 'final decision' appealable under 28 U.S.C. § 1291." *Danford v. Schwabacher,* 488 F.2d 454, 455 (9th Cir.1973). However, under 28 U.S.C. § 1292(a)(1) (1976), this court has jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or

---

1. On February 16, 1981, Ssangyong filed a Request for Arbitration in Korea with the Korean Commercial Arbitration Board.

2. Counts 3, 5 and 6 of the complaint, which involve only defendants Trac Enterprises and its president, are not involved in this appeal.

modify injunctions . . . ." Utilizing this section, this circuit has explained that under certain circumstances, an interlocutory stay order may be reviewed by the Court of Appeals.[3] *See Brannon v. Warn Bros., Inc.,* 508 F.2d 115, 118–19 (9th Cir.1974); *see also ATSA of California, Inc. v. Continental Insurance Co.,* 702 F.2d 172, 174 & n. 2 (9th Cir.1983).

■ An appeal from a stay order lies if two conditions are met:

(a) The action in which the motion for a stay was made could have been maintained as an action at law before the merger of law and equity, and (b) the stay was sought to permit prior determination of an equitable defense or counterclaim.

*Danford,* 488 F.2d at 455, *quoted in Brannon,* 508 F.2d at 118. Both prongs of the test are satisfied here. *See Wren v. Sletten Construction Co.,* 654 F.2d 529, 532–33 (9th Cir.1981).

■ The second prong is satisfied because reliance upon an arbitration agreement to avoid immediate litigation is an equitable defense. *See, e.g., Schanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 293 U.S. 449, 452, 55 S.Ct. 313, 314–15, 79 L.Ed. 583, 586–87 (1935); *Wren,* 654 F.2d at 533; *Danford,* 488 F.2d at 456.

To determine whether the first prong of the test is satisfied, we must examine MEI's complaint to determine whether it would have been considered legal or equitable prior to the merger of the two forms of action. *See Brannon,* 508 F.2d at 118–19; *Danford,* 488 F.2d at 456. When the complaint is arguably a combination of legal and equitable claims, this circuit has applied a "dominant purpose" test, which provides that when the complaint is "wholly or basically and predominantly an action at law," it is considered legal for the purpose of satisfying the test's first prong. *Alexander v. Pacific Maritime Ass'n,* 332 F.2d 266, 267 (9th Cir.) (dictum), *cert. denied,* 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964), *quoted in Brannon,* 508 F.2d at 119.

In this case, the first prong is satisfied because MEI's complaint is predominantly an action at law. MEI seeks money damages in each of its six counts against Ssangyong, and while count 8, quantum meruit, is an equitable claim, MEI's other counts can be classified as legal. Counts 1, 2, and 7, which allege breach of contract and inducing breach of contract, are actions at law. *See Wren,* 654 F.2d at 533; *Bear v. Hayden, Stone, Inc.,* 526 F.2d 734, 735 (9th Cir.1975). Count 4, alleging breach of fiduciary duty, has been considered an action at law when, as in this case, money damages are sought. *Cf. Austin v. Wilcoxson,* 149 Cal. 24, 26–27, 84 P. 417, 418–22 (1906); *Ripling v. Superior Court,* 112 Cal.App.2d 399, 403–07, 247 P.2d 117, 119 (1952) (actions alleging impropriety by trustees). Count 9, conversion, was also historically classified as a legal action. *See, e.g., United States v. Bitter Root Development Co.,* 200 U.S. 451, 471–72, 26 S.Ct. 318, 324–25, 50 L.Ed. 550, 560–61 (1906); *see also* 1 T. Street, *Federal Equity Practice* 26–29 (1909).

**II.** *Interpretation of the Arbitration Clause*

**A.** *Standard of review and applicable law*

■ A determination of the arbitrability of a dispute, like the interpretation of any

---

**3.** These cases interpret the Supreme Court's *Enelow-Ettelson* rule, which analogizes certain stay orders to injunctions appealable under 28 U.S.C. § 1292(a)(1) (1976). *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). *See also Baltimore Contractors v. Bodinger,* 348 U.S. 176, 184, 75 S.Ct. 249, 254, 99 L.Ed. 233, 240 (1955) (explaining that the *Enelow-Ettelson* rule applies only to "a stay through equitable principles of a common-law action").

The rule has been justifiably criticized as "extremely difficult to apply" in cases where the complaint contains a mixture of legal and equitable claims. C. Wright, *Handbook of the Law of Federal Courts* § 102, at 515 (3d ed. 1976). This circuit has called the rule "peculiar," and has labelled it "a remnant from the jurisprudential attic." *Danford,* 488 F.2d at 455–56. Despite its arcane nature, the rule has not yet been discarded by the Supreme Court and remains the law of this circuit.

contractual provision, is subject to *de novo* review. *See In re Bubble Up Delaware, Inc.,* 684 F.2d 1259, 1264 (9th Cir.1982) (*de novo* standard for contractual interpretation); *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International,* 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474, 476–77 (1962) (issue of arbitrability a "question for the courts").

■ The district court's order followed Ssangyong's motion to stay brought pursuant to 9 U.S.C. § 4, a section of the Federal Arbitration Act (Act), 9 U.S.C. § 1 *et seq.* (1976). The district court correctly found that "the written arbitration provision is part of a 'contract evidencing a transaction involving commerce' within the meaning of [9 U.S.C. § 2 (1976)]." An action brought under the Act is properly characterized as arising under the body of federal law regulating interstate commerce. *See generally Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.,* 550 F.2d 1320 (2d Cir.1977). Federal law therefore applies to our determination of the scope of this arbitration agreement.[4] *ATSA of California, Inc. v. Continental Insurance Co.,* 702 F.2d 172, 174–75 (9th Cir. 1983); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 638 n. 8 (5th Cir.1977); *Zell v. Jacoby-Bender, Inc.,* 542 F.2d 34, 37 (7th Cir.1976).

### B. *Policy considerations*

■ The parties cite strong policies in support of their respective positions. Ssangyong argues that federal policy favors the enforcement of arbitration agreements, especially in international business transactions, citing *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 516–17, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270, 279–80 (1974). MEI does not dispute the existence of such a federal policy, but counters by arguing that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit," quoting *United Steel Workers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). Both statements are sound, and are not at all unreconcilable. Ultimately, the issue of arbitrability "is to be determined by the contract entered into by the parties." *Drake Bakeries,* 370 U.S. at 256, 82 S.Ct. at 1348, 8 L.Ed.2d at 476; *accord West Coast Telephone Co. v. Local Union No. 77, International Brotherhood of Electrical Workers,* 431 F.2d 1219, 1221 (9th Cir.1970). The task before this court remains one of contractual interpretation.

### C. *Scope of "arising hereunder"*

■ Ssangyong argues that the arbitration clause "was designed to cover 'any' disputes between the parties." MEI argues that the phrase "arising hereunder" means "arising under the contract itself" and was not intended to cover "matters or claims independent of the contract or collateral thereto." Neither side points to, and additional research has not uncovered, cases in this circuit which define "arising hereunder" in the context of an arbitration agreement. However, we are persuaded by a line of cases from the Second Circuit that MEI's interpretation is the more reasonable one.[5]

---

**4.** Neither party disputes the application of federal law to this appeal, even though paragraph 21 of the Agreement provides that the contract shall be construed according to California law.

**5.** The cases cited by Ssangyong in support of its broad interpretation are unpersuasive. Most cited cases involve arbitration clauses which were drafted in broader terms and intended to cover a broader spectrum of disputes than the clause involved here. *See, e.g., Griffin v. Semperit of America, Inc.,* 414 F.Supp. 1384, 1387 (S.D.Tex.1978) (clause read, "[a]ny controversy or claim arising out of or relating to

this agreement"); *Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir.1975) (same); *Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd.,* 385 F.2d 158, 159 (2d Cir.1967) (clause read, "any dispute . . . arising out of or relating to this contract or the breach thereof"). Most of the cases cited by Ssangyong also involve disputes more clearly arising under the contract than those involved here. *See, e.g., Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496, 499 (9th Cir. 1976) (holding arbitrable a claim which itself purported to be based on an interpretation of

We interpret "arising hereunder" as synonymous with "arising under the Agreement." The phrase "arising under" has been called "relatively narrow as arbitration clauses go." *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 253 F.Supp. 359, 364 (S.D.N.Y.1966). In *In re Kinoshita & Co.,* 287 F.2d 951, 953 (2d Cir. 1961), Judge Medina concluded that when an arbitration clause "refers to disputes or controversies 'under' or 'arising out of' the contract," arbitration is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." Judge Medina reasoned that the phrase "arising under" is narrower in scope than the phrase "arising out of or relating to," the standard language recommended by the American Arbitration Association. *Id.*

In a recent case, a district court amplified Judge Medina's reasoning. In *Michele Amoruso e Figli v. Fisheries Development Corp.,* 499 F.Supp. 1074, 1080 (S.D.N.Y. 1980), the court discussed the Supreme Court's interpretation of an arbitration clause, noting that "arising out of or relating to this agreement" had been labelled a "broad arbitration clause." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270, 1274 (1967)). The court went on to say that in the case before it, "the clause is limited to differences or disputes 'arising out of this Agreement'; notably, it omits reference to disputes 'relating to' the agreements. The omission is significant in the Second Circuit." *Michele Amoruso e Figli,* 499 F.Supp. at 1080.

The omission should be significant in this circuit as well. The standard clause suggested in the U.S.—Korean Commercial Arbitration Agreement contains the phrase, "out of or in relation to or in connection with this contract, or for the breach thereof." We have no difficulty finding that "arising hereunder" is intended to cover a much narrower scope of disputes, *i.e.,* only those relating to the interpretation and performance of the contract itself.

## D. *Arbitrability of claims*

In light of our interpretation of the arbitration clause in the Agreement, we must next decide whether the district court properly sent "the issues raised by" counts 1, 2 and 4 to arbitration. This entails examining MEI's complaint to determine the extent to which the counts against Ssangyong refer to disputes or controversies relating to the interpretation and performance of the contract itself.

█ Counts 1, 2 and 4, alleging breach of the Agreement and breach of the fiduciary duty created by the Agreement, clearly fall within the scope of the arbitration clause and are thus proper subjects for arbitration. However, counts 7, 8 and 9 appear to raise issues that are either primarily or wholly outside the scope of the arbitration clause.

█ Count 7 alleges that Ssangyong induced and conspired to induce breach of the Trac Agency Agreement, a separate and distinct contract. Ssangyong's alleged conduct appears to relate only peripherally to the MEI-Ssangyong Agreement, and could have been accomplished even if the Agreement did not exist. Count 7 therefore alleges activity and raises issues which are predominantly unrelated to the central conflict over the interpretation and performance of the Agreement.

█ Count 8 sets forth a claim in quantum meruit, which by its own terms rests on the theory that services were performed and accepted pursuant to an implied contract or "quasi-contract." An action does not lie on an implied contract where there exists between the parties a valid express contract which covers the identical subject matter. *Swanson v. Levy,* 509 F.2d 859, 861 (9th Cir.1975). Thus, by definition, count 8 does not directly relate to the inter-

the contract); *Georgia Power Co. v. Cimarron Coal Corp.,* 526 F.2d 101, 106 (6th Cir.1975), *cert. denied,* 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976) (holding that, under an arbi-

tration clause which read, "any controversy . . . arising under this Agreement," no "provision of the contract [was] wholly outside of the arbitration provision").

pretation and performance of the Agreement itself.

Count 9 alleges that Ssangyong converted to its own use and benefit certain prequalification documents delivered by MEI. The Agreement provides only that each of the parties would bear his own costs at the prequalification stage. MEI's claim that Ssangyong misappropriated these documents appears to raise issues largely distinct from the central conflict over the interpretation and performance of the Agreement itself.

By sending "the issues raised by" counts 1, 2 and 4 to arbitration, the district court authorized the arbitrator, in accordance with the expressed intention of the parties, to decide those issues relating to the interpretation and performance of the Agreement. Counts 1, 2 and 4 appear to be completely arbitrable. By deciding those issues necessary to resolve counts 1, 2 and 4, the arbitrator might well decide issues which bear in some way on the court's ultimate disposition of counts 7, 8 and 9. Nothing in the district court's order, or in this opinion, would bar such a result. The arbitrator's award, if it clearly exceeds the scope of his authority by deciding a matter not within the ambit of the arbitration clause, will not be given effect by the court. *See Los Angeles Paper Bag Co. v. Printing Specialities and Paper Products Union,* 345 F.2d 757, 760 (9th Cir.1965); *Lundgren v. Freeman,* 307 F.2d 104, 109–10 (9th Cir. 1962). *See also Davis v. Chevy Chase Financial Ltd.,* 667 F.2d 160, 165 (D.C.Cir. 1981). After the district court receives the results of the arbitration, it should proceed to adjudicate those issues which fall outside the scope of the arbitration clause.

III. *Propriety of the Stay Pending Arbitration*

We should overturn a trial court's stay of an action only when we believe the court has abused its discretion. *See Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244 (9th Cir.1972), *cert. denied,* 409 U.S.

1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973). The trial court possesses the inherent power to control its own docket and calendar. *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153, 158–59 (1936); *accord Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 864 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). As this circuit recently stated,

> [a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva,* 593 F.2d at 863–64 (citing *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). We believe that under the circumstances presented in this case, the district court did not abuse its discretion by staying the action pending receipt of the results of arbitration.

CONCLUSION

We find the district court's order staying the action and sending to arbitration certain issues raised by MEI's complaint proper in all respects.

Accordingly, the order is

AFFIRMED.