784 F.2d 902
 54 USLW 2536
 James FRENCH, Plaintiff-Appellant,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation,
Defendant-Appellee.
R. James FRENCH, Plaintiff-Appellee,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation,
Defendant- Appellant.
 Nos. 85-1653, 85-1702.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 12, 1985.
Decided March 6, 1986.
 
 Robert Charles Friese, Anthony B. Levin, Shartsis, Friese & Ginsburg, San Francisco, Cal., for plaintiff-appellant.
 W. Reece Bader, William Riley, Anne Bookin, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, NELSON and CANBY, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 This appeal stems from a decision rendered by a duly constituted Arbitration Panel ("Panel") of the Pacific Stock Exchange ("PSE"), holding Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") liable to R. James French ("French"), for negligent misrepresentation in connection with French's sale of option contracts to a Merrill Lynch broker. The Panel awarded French compensatory damages of $52,925.00, interest on that award, and consequential damages of $275,000.00 resulting from lost profits. The district court confirmed the Panel's award of compensatory damages and interest but struck the award of consequential damages. Both parties now appeal to this court.
 
 
 2
 We affirm the district court's confirmation of the compensatory damages award and its assessment of interest, but reverse its vacation of the consequential damages award.
 
 FACTUAL BACKGROUND
 
 3
 On July 28, 1982, as a "marketmaker" on the options floor of the PSE, French was engaged in the trading of Heublein call options. Heublein had been a rumored takeover candidate for several months, during which time there had been periodic bursts of activity in the stock and options. At approximately 9:30 a.m., William Grebitus, a floor broker for Merrill Lynch, began to purchase a "size" or large order of Heublein call options. French asked Grebitus at least twice whether the order was an "opening" or a "closing".[1] Grebitus wrongly informed French and other traders that the order was a closing when in fact it was an opening. French subsequently sold short, in two separate trades, a large quantity of the options to Grebitus.
 
 
 4
 Only minutes after the subject trades, the Exchange suspended all trading in Heublein securities. Merrill Lynch then disclosed that the Grebitus order had actually been an opening rather than a closing. Before trading resumed the following day, R.J. Reynolds Industries, Inc. announced an offer for the majority of Heublein's outstanding common stock, causing the price of the stock and options to increase. In satisfying Merrill Lynch's orders, French suffered an out-of-pocket loss of about $53,000, and thereafter, lost profits he could have made by trading the $53,000.
 
 
 5
 On November 3, 1982, French filed a complaint in federal court, charging Merrill Lynch with misrepresenting the nature of its purchase order in violation of various federal and state laws. He sought rescission of the subject trades, punitive damages, attorney's fees and costs, and compensatory damages in the sum of $69,050.00, plus interest. Merrill Lynch moved to stay the proceedings and compel arbitration, relying on the PSE Constitution and Rules, which provide for arbitration of "[a]ny dispute, claim or controversy between members ... at the request of [either] party." PSE Rule XII, Sec. 1(a) Pac. Stock Exchg. Guide (CCH) p 5300 (emphasis added).
 
 
 6
 On January 14, 1983, before the motion was heard, the parties stipulated "that the claims set forth in the complaint on file [with the district court] shall be submitted to arbitration pursuant to the constitution and rules of the [PSE]." The parties then executed a Uniform Submission Agreement ("Submission Agreement") wherein they explicitly acknowledged their decision to submit to arbitration the "matter in controversy, as set forth in [an] attached statement of claim ... in accordance with the Constitution [and] ... Rules ... of the [PSE]." Merrill Lynch stated in writing that it had executed the Submission Agreement "with the understanding that the statement of claim to be attached ... would be the Complaint ... [then] on file with the District Court," and added that if that "understanding [were] erroneous, [it] reserve[d] the right to revoke the signing of the Submission Agreement until such time as [it] ... ha[d] an opportunity to review [the] claim and ... prepare[ ] a response thereto."
 
 
 7
 Two days before the scheduled hearing date, French gave notice that he intended to seek those consequential damages stemming from his loss of available trading capital during the months following the subject trades. Merrill Lynch urged the Panel to strike the consequential damages claim and to preclude French from submitting any evidence on the claim. Nevertheless, the Panel allowed French to amend his prayer pursuant to Section 27 of PSE Rule XII, and to present evidence on the consequential damages claim. It continued the hearing for thirty days and allowed Merrill Lynch further opportunity to depose witnesses and discover documents.
 
 
 8
 At the conclusion of the arbitration, on July 27, 1984, the Panel found Merrill Lynch liable for negligent misrepresentation. It awarded French compensatory damages of $52,925; interest on that amount, calculated at the broker-call rate, to accrue from August 1, 1982 through the date of payment; and consequential damages of $275,000.
 
 
 9
 On November 1, 1984, the district court heard argument on French's motion to confirm under 9 U.S.C. Sec. 9, and Merrill Lynch's motion to vacate or modify under 9 U.S.C. Secs. 10 and 11. Merrill Lynch contested the arbitrability of French's consequential damages and interest claims, and while conceding the arbitrability of its compensatory damages claim, took issue with the Panel's conclusion of law with respect to that claim (i.e., its finding of liability). Judge Vukasin issued an order, January 14, 1985, confirming the award of compensatory damages and interest, and vacating the award of consequential damages as beyond the scope of the matter submitted to arbitration. French timely appealed the order to vacate, and Merrill Lynch timely cross-appealed the order to confirm. French asks this court to award attorney's fees pursuant to Fed.R.App.P. 38 for the costs he incurred in responding to the cross-appeal.
 
 ISSUES
 
 10
 I. Is the district court's order a final judgment pursuant to 28 U.S.C. Sec. 1291, over which this court has appellate jurisdiction?
 
 
 11
 II. Was the district court correct in confirming the Panel's compensatory award, based as it was on a finding that Merrill Lynch's misrepresentation was a material fact upon which French could reasonably rely?
 
 
 12
 III. Was the district court correct in holding that the Panel did not exceed its powers by awarding French interest on his damage award at the broker call-rate, to accrue from August 1, 1982 through the first day of the month in which the damages are paid?
 
 
 13
 IV. Was the district court correct in vacating the award of consequential damages on the ground that it was beyond the scope of the matters the parties agreed to submit to arbitration?
 
 
 14
 V. Should French be awarded attorney's fees incurred in responding to Merrill Lynch's cross-appeal because that appeal is frivolous?
 
 DISCUSSION
 I. Jurisdiction
 
 15
 Both parties urge us to hold that 28 U.S.C. Sec. 1291 does not require dismissal of this case and that we can and should determine the validity of the district court's order. We agree. Pursuant to Sec. 1291, this court has jurisdiction over appeals from "final" decisions of the district court. We have just such a decision here. While the district court might have determined, in a trial of its own, whether French was deserving of consequential damages, see Sentry Life Ins. Co. v. Borad, 759 F.2d 695, 697 (9th Cir.1985), close examination of the record reveals that French never asserted the right to try the issue in the event that the district court held it non-arbitrable. Accordingly, we view Judge Vukasin's order as disposing of all the issues put before him by the parties. We consider the judgment "an attempt to dispose of all claims in the action," Squaxin Island Tribe v. State of Washington, 781 F.2d 715, 719 (9th Cir.1986),[2] and proceed to consider its validity.[3]
 
 II. Compensatory Damages
 
 16
 Under California law, negligent misrepresentation is a form of "deceit," see Cal.Civ.Code Secs. 1709 and 1710 (West 1985), liability for which is predicated upon the misstatement of a material fact. See Gonsalves v. Hodgson, 38 Cal.2d 91, 100-01, 237 P.2d 656, 662 (1951). Merrill Lynch contends that the Panel's compensatory award must be overturned because open/close information is not a material fact upon which French could have reasonably relied in making the subject transactions.
 
 
 17
 We review the Panel's award mindful that confirmation is required even in the face of "erroneous findings of fact or misinterpretations of law."[4] American Postal Workers Union, AFL-CIO v. United States Postal Service, 682 F.2d 1280, 1285 (9th Cir.1982), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); see Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1275 (9th Cir.1984) (arbitrator's factual determinations and legal conclusions should receive deferential review), cert. denied, --- U.S. ----, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); George Day Construction Co. v. United Brotherhood of Carpenters, 722 F.2d 1471, 1477 (9th Cir.1984) (award must be enforced "notwithstanding the erroneousness of any factual findings or legal conclusions ..."); Broadway Cab Cooperative v. Teamsters & Chauffeurs Local, 710 F.2d 1379, 1382 (9th Cir.1983) (arbitrator's factual determinations and legal conclusions accorded deference); Coast Trading Co. v. Pacific Molasses Co., 681 F.2d 1195, 1198 (9th Cir.1982) ("The rule is, though the 'arbitrators' view of the law might be open to serious question, ... [an award] which is within the terms of the submission, will not be set aside by a court for error either in law or fact'....") (quoting San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd., 293 F.2d 796, 800 (9th Cir.1961)). It is not even enough that the Panel may have failed to understand or apply the law. See Thompson v. Tega-Rand Int'l, 740 F.2d 762, 763 (9th Cir.1984); see also 9 U.S.C. Secs. 10 and 11 (expressly stating appropriate grounds for vacation and modification of award). An arbitrator's decision must be upheld unless it is "completely irrational," Swift Industries v. Botany Industries, 466 F.2d 1125, 1131 (3d Cir.1972), or it constitutes a "manifest disregard of the law." George Day Construction Co., 722 F.2d at 1477.
 
 
 18
 No such irrationality or disregard is evident here. California defines a legally "material fact ... [as one that] 'would be likely to affect the conduct of a reasonable man with reference to the transaction in question.' " Wood v. Kalbaugh, 39 Cal.App.3d 926, 930, 114 Cal.Rptr. 673, 676 (1974) (quoting Costello v. Roer, 77 Cal.App.2d 174, 178, 175 P.2d 65, 68 (1946)).[5] The Panel's determination of materiality is adequately supported by the record. First, French testified that an opening order establishes a position and increases risk and, conversely, that a closing order decreases the position and reduces risk. He further testified that such information is particularly significant when considering a large order in a volatile market affected by takeover rumors. Second, a number of expert witnesses, including other marketmakers, testified that Merrill Lynch's misrepresentation was material in that context. Finally, several other traders besides French asked Merrill Lynch whether its order was an opening or closing, and at least three of them attempted to rescind their trades upon learning of the misrepresentation.
 
 
 19
 Merrill Lynch's reliance upon several "uncontroverted facts" suggesting that open/close information is immaterial, go to the general materiality of that information, and do not take account of the special circumstances existing on the morning of July 22, 1982.[6] The Panel "recognized that the open/close information [is] not always material, but felt that it was [material] in the particular circumstances on that day." Nor does French's stipulation that he cannot discern what a customer is thinking when the latter places an opening order to buy call options belie the Panel's determination of materiality. Information about a customer's intentions may be material even where it does not provide absolute certainty as to those intentions. In sum, the Panel's award of compensatory damages is not "completely irrational," and should be upheld.
 
 III. Interest Award
 
 20
 Merrill Lynch contends that the Panel's award of interest on the compensatory damages--to be calculated at the broker call rate, and to run from August 1, 1982 until the first day of the month in which the damages are paid--was improper.
 
 
 21
 Inasmuch as Merrill Lynch's liability is founded on a violation of California law, we should look to that law first in assessing the Panel's award of interest. Section 3287(a) of the California Civil Code (West 1970) provides for the recovery of interest where "damages [are] certain, or capable of being made certain by calculation, and the right to recover ... is vested ... upon a particular day." Here, French's right to recover was vested no later than the date upon which he filed his complaint. Further, his actual damages were capable of being made certain by calculation. By Merrill Lynch's own admission, they equaled the sum he had to pay to cover his short sale of the Heublein options. The fact that liability is contested does not make the sum of damages uncertain within the meaning of the statute. See Bott v. American Hydrocarbon Corp., 458 F.2d 229, 232 (5th Cir.1972). Thus, Merrill Lynch is wrong in arguing that California law limits the availability of interest to circumstances not present here.[7]
 
 
 22
 Merrill Lynch further contends that the broker-call rate of interest, ranging from 10% to 12.5%, "far exceeds the applicable prejudgment legal rate of 7% per annum." See Cal. Const. Art. 15 Sec. 1 (providing for cap of 7%), cited in Davis & Cox v. Summa Corp., 751 F.2d 1507, 1522 (9th Cir.1985). While Merrill Lynch makes no mention of a limitation on post-judgment interest, California law provides for a maximum of 10% per annum. Accordingly, if the Panel meant to provide for pre- and postjudgment interest qua interest, it should have limited the rates of recovery to 7% and 10% respectively.
 
 
 23
 It is possible, though, that the Panel's award of interest at the broker-call rate was meant as an award of consequential damages--i.e., as a substitute for lost profits apart from, and in addition to, the consequential damages award so labeled. Because an award of consequential damages was within the power of the Panel (see infra Sec. IV), we affirm the confirmation of the whole interest award.[8]
 
 IV. Consequential Damages
 
 24
 The district court held that the award of consequential damages exceeded the panel's scope of authority as defined by agreement of the parties. This court reviews de novo that determination of arbitrability. See Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1462-63 (9th Cir.1983).
 
 
 25
 "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Thus, an arbitrator's powers are delimited by the agreement of the parties themselves. Any award not drawn from that agreement is invalid. See Mediterranean Enterprises, 708 F.2d at 1465 (decision beyond ambit of arbitration agreement not given effect by court); Coast Trading Co. v. Pacific Molasses Co., 681 F.2d 1195, 1198 (9th Cir.1982) (vacating award where relief granted exceeded authority given arbitrators by consent of parties in submission agreement). However, "any doubts concerning the scope of [that agreement] should be resolved in favor of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., --- U.S. ----, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (citing Moses H. Cone with approval while holding antitrust claims arbitrable under governing arbitration agreement). In this Circuit, an otherwise valid arbitration award will not be vacated " 'unless it may be said with positive assurance that the [agreement] is not susceptible of an interpretation that covers the [award].' " Local Joint Exec. Bd. v. Royal Center, Inc., 754 F.2d 835, 838 (9th Cir.1985) (quoting Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 419 (9th Cir.1984)). The purported agreement between French and Merrill Lynch is susceptible of an interpretation that covers the Panel's power to arbitrate the issue of consequential damages. Accordingly, the district court's determination of non-arbitrability was incorrect.
 
 
 26
 Merrill Lynch contends that the parties' agreement to arbitrate precluded the Panel's consideration of any damages not specifically pleaded in French's original complaint. On January 14, 1983, the parties stipulated to the submission of those "claims set forth in the complaint...." (emphasis added). The Submission Agreement and February 4, 1983 letter from Merrill Lynch to French also provided for the submission of their "matter in controversy, as set forth in the [complaint]...." (emphasis added).
 
 
 27
 But the parties did not merely submit to arbitration the claims set forth in the complaint. They submitted those claims "in accordance with," (emphasis added), and "pursuant to," (emphasis added), "the constitution and rules of the [PSE]." The PSE Rules incorporated into the parties' agreement confer upon PSE arbitrators the right to allow amendments to the pleading upon such terms and conditions as the arbitrators direct. See Rule XII, Sec. 27, PSE Guide (CCH) p 5350. Thus, the agreement to arbitrate, as reflected in both the stipulation and the Submission Agreement, is susceptible of an interpretation that would permit (at the discretion of the Panel) amendment of French's complaint.[9] Insofar as an award of consequential damages required French's amendment,[10] the district court should have determined that the amendment was proper. We reverse its decision to the contrary. Further, we find that the award was neither "completely irrational" nor a "manifest disregard of the law." Under Section 3333 of the California Civil Code (West 1970), damages may be awarded for lost profits. Cf. Natural Soda Products Co. v. City of Los Angeles, 23 Cal.2d 193, 199-200, 143 P.2d 12, 17 (1943) (award of damages for loss of profits depends upon whether there is satisfactory basis for estimating what probable earnings would have been without tort), cert. denied, 321 U.S. 793, 64 S.Ct. 790, 88 L.Ed. 1082 (1944). Therefore, we reinstate the Panel's award of consequential damages.
 
 V. Attorney's Fees
 
 28
 French's request for attorney's fees pursuant to Fed.R.App.P. 38 is denied. Though ultimately unpersuasive, Merrill Lynch's argument that the interest award should have been vacated or modified was not "frivolous". Nor was that part of Merrill Lynch's cross-appeal contesting the Panel's compensatory award so "frivolous" as to warrant a sanction in the form of attorney's fees. Cf. Thompson v. Tega-Rand Int'l, 740 F.2d 762, 764 (9th Cir.1984). This court has held that an appeal is frivolous only "if the result is obvious, or the arguments of error are wholly without merit." DeWitt v. Western Pacific Railroad Co., 719 F.2d 1448, 1451 (9th Cir.1983) (emphasis added). Here, French's stipulation of fact with respect to the meaning of open/close information at least calls into question the rationality of the arbitrator's decision, even if it does not render that decision "completely irrational."
 
 CONCLUSION
 
 29
 Thus, we affirm the district court's confirmation of the compensatory damages award and assessment of interest and reverse the district court's vacation of the consequential damages award.
 
 
 30
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED with instructions that the Panel's award be reinstated in full.
 
 
 
 [1]
 When a buyer purchases options in order to establish a position or add to his previous purchase, his order is designated an "opening". When, on the other hand, a buyer purchases options in order to cover a short sale (i.e., a sale of options the seller did not own), his order is designated a "closing"; he is, in effect, balancing or "closing" his books
 
 
 [2]
 The district court's failure to record its judgment in a separate document, as required by Fed.R.Civ.P. 58, does not deprive us of jurisdiction. The judgment was recorded in the clerk's docket and neither party objected to the taking of the appeal in the absence of a separate judgment. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384, 387-88, 98 S.Ct. 1117, 1119, 1121, 55 L.Ed.2d 357 (1978) (separate-judgment requirement not "a categorical imperative" and may be waived)
 
 
 [3]
 It is also worth noting that even if the case came to us after the district court held a trial on the issue of consequential damages, our review of the Panel's decision would be de novo. See Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1462-63 (9th Cir.1983). That is, the district court's resolution of the issues would be accorded no special deference in this court. Thus, "we find that no practical benefits would accrue from a dismissal for lack of appellate jurisdiction." Squaxin Island Tribe, at 719
 
 
 [4]
 The Panel characterizes as a factual finding its conclusion that Merrill Lynch's misrepresentation of the order as a closing transaction was material to French's trading decision. That characterization accords with Jorgensen v. Beach 'N' Bay Realty, Inc., 125 Cal.App.3d 155, 160-61, 177 Cal.Rptr. 882, 886 (1981), wherein the California Court of Appeal determined that the issue of materiality should have been put before a jury. In the federal context, the question of materiality is a mixed question of law and fact, but involves "assessments peculiarly within the province of the trier of fact." Toombs v. Leone, 777 F.2d 465, 469 (9th Cir.1985) (quoting Arrington v. Merrill Lynch, Pierce, Fenner & Smith, 651 F.2d 615, 619 (9th Cir.1981)). Whether the Panel's determination of materiality is characterized as a conclusion of law or a finding of fact is inconsequential here. In either case, the review accorded that determination is deferential
 
 
 [5]
 Materiality is similarly defined under federal law. See TSC Industries v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (fact is material if its existence or nonexistence is matter to which reasonable person would attach importance in determining choice of action in transaction); SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir.1982) (same)
 
 
 [6]
 Merrill Lynch points particularly to the following "uncontroverted facts": (1) open/close information has not been intended to be anything but a bookkeeping entry used for clearing purposes; (2) marketmakers do not routinely ask for open/close information on option exchanges; (3) option exchanges do not have a rule requiring that open/close information be disclosed; (4) there is no formal record of any prior attempt to rescind a trade on the basis of a mistake in open/close information; and (5) the number of errors made with respect to open/close information renders any consideration of the factor by marketmakers unreasonable
 
 
 [7]
 Perhaps its argument is based on the belief that Cal.Civ.Code Sec. 3287(a) (West 1970) applies only to actions in contract. That belief, however, is belied by the case law. See, e.g., Western Union Tel. Co. v. Lange, 248 Fed. 656, 664 (9th Cir.1918) (senders of telegram negligently delayed in transmission entitled to recover interest from telegraph company), rev'd on other grounds, 253 U.S. 101, 40 S.Ct. 460, 64 L.Ed. 803 (1920); Orme v. State ex rel. Dep't of Water Resources, 83 Cal.App.3d 178, 186, 147 Cal.Rptr. 735, 740 (1978) (assessment of interest in condemnation action involving loss of rice crops); Levy-Zentner Co. v. Southern Pacific Transportation Co., 74 Cal.App.3d 762, 797-98, 142 Cal.Rptr. 1, 24 (1977) (pre-judgment interest available in tort actions)
 
 
 [8]
 This court need not decide what the Panel actually intended. It must confirm the Panel's decision insofar as it is not "completely irrational" and does not constitute a "manifest disregard of the law." See supra Sec. II. Thus, we adopt that interpretation of the Panel's interest award most consistent with confirmation. Cf. George Day Construction Co., 722 F.2d at 1477 (award should be enforced "even if the basis for decision is ambiguous")
 
 
 [9]
 Merrill Lynch also points to the portion of its February 4, 1983 letter wherein it "reserve[d] the right to revoke the signing of the Submission Agreement," as clear evidence of its understanding that the complaint could not be amended. Yet the right of revocation makes no less plausible the interpretation of the parties' agreement proffered above. Merrill Lynch did not, even by its reservation, explicitly preclude the possibility of amendment. Its right of revocation might be viewed as having precluded French only from changing his complaint absent the Panel's permission to amend. Further, even if the February 4 letter is susceptible of a reading that would have allowed revocation of the Submission Agreement in the event of French's amendment, Merrill Lynch never attempted such a revocation. Either it did not believe that the letter evidenced such a right to revoke, or it deliberately waived that right
 
 
 [10]
 Even if the parties' agreement to arbitrate (as reflected in their stipulation and Submission Agreement) precluded amendment, French would still prevail. PSE Rule XII, Sec. 1(a) provides:
 Any dispute, claim or controversy between parties who are members, member organizations or associated persons arising in connection with the securities business of such parties shall, at the request of any such party, be submitted for arbitration in accordance with this Rule.
 Pac. Stock Exchg. Guide (CCH) p 5300 (emphasis added). French's amendment of the complaint can be viewed as his own request to have the consequential damages claim arbitrated. The amendment certainly put Merrill Lynch on notice that French intended to recover such damages, and PSE Rule XII contains no formal requirements for making an arbitration request. Thus, French was entitled to have his consequential damages claim heard by the Panel, if for no other reason, because he implicitly requested arbitration of that claim.