*1423
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 In three separate agreements, appellant Raymond B. Graber, II (“Graber”), then a shareholder of Outdoor Poster, Inc. (“Outdoor Poster”), acted as a guarantor of loan agreements between Comstock Bank (“Comstock”) and Outdoor Poster. On July 1, 1983, Comstock issued Outdoor Poster a $425,000.00 construction loan and received a priority interest in Outdoor Poster’s assets and a personal guarantee from Graber and his wife. The personal guarantee required Comstock to protect the value of the security interest it held in Outdoor Poster’s assets and, in the event of default, exhaust that interest before proceeding against the Grabers.
 

 Comstock perfected its security interest by filing a UCC financing statement against the Outdoor Poster equipment. The UCC provides a process for securing personal property as collateral for a loan. If a UCC filing is active and operates in favor of a particular creditor, that creditor is a secured party who may take possession of the collateral in the event of a default. NRS 104.9504. Comstock knew its status as a secured creditor depended upon keeping the financing statement current. Also, Comstock knew it could unilaterally renew the financing statement when it expired in five years.
 

 In September 1984, Outdoor Poster defaulted on its loan payments, prompting renegotiation of the Outdoor Poster loan. Also, Comstock and the Grabers executed a personal guarantee for the renegotiated loan. Comstock’s intent during the renegotiation was to eliminate the clause in the 1983 guarantee that required exhaustion of Outdoor Poster’s assets before proceeding against the Grabers. Comstock considered the primary security for the Outdoor Poster loans to be the Grabers’ real estate because Outdoor Poster’s equipment would be difficult to sell due to the unique nature of Outdoor Poster’s operations.
 

 
 *1424
 
 The 1984 agreement extended Outdoor Poster’s payment period from five to fifteen years, lowering the monthly payment obligation. The new agreement also referenced the UCC financing statement and stated that it applied to the 1984 documents. However, the new agreement did not contain the exhaustion clause and it waived Comstock’s obligation as a creditor to protect the value of the loan’s collateral.
 

 Graber testified at the arbitration hearing that he only read the portion of the 1984 loan agreement that referred to the loan period and monthly payment obligation. Comstock’s representative could not recall whether Graber was informed of the changes to the 1984 documents, but the new documents appeared different on their face and the negotiations in 1984 focused exclusively on securing the Grabers’ property. Also, a letter sent to Graber by Comstock’s counsel stated that “the bank will additionally require signature of new documents for any renegotiated loan package, including but not limited to additional deeds of trust and new continuing guaranties.”
 

 As part of the 1984 agreement, Outdoor Poster agreed not to encumber, mortgage, pledge, or assign as security the collateral pledged to Comstock. However, two UCC financing statements were issued by Outdoor Poster that pledged the company’s equipment as security to other creditors. In 1986, HELL Graphics was issued a UCC financing statement to secure a loan for new equipment it provided to Outdoor Poster. In 1987, J.J.L., Inc. was issued a UCC financing statement for a loan Outdoor Poster used for operating expenses.
 

 The UCC financing statement filed by Comstock to assure that its security interest had priority over other creditors expired on June 30, 1988. As a result, HELL Graphics and J.J.L., Inc. displaced Comstock as senior creditors. According to an internal Comstock memorandum, the UCC financing statement expired due to Comstock’s negligence or clerical errors. Graber testified that he had no knowledge of either the HELL Graphics or J.J.L., Inc. financing statements.
 

 A third loan agreement was entered into in 1989 when Outdoor Poster defaulted on the 1984 loan. Comstock agreed to loan approximately $172,000.00 to the Grabers if the funds were used to cure Outdoor Poster’s default. The loan to the Grabers was secured by three homes owned by Mr. Graber. The loan also released Mrs. Graber from liability as a guarantor for any Outdoor Poster loan. The 1989 loan mirrored the two previous loans by using the assets of Outdoor Poster as security. However, Comstock knew that their UCC financing statement had expired, making their interest in Outdoor Poster’s assets virtually worthless. Also, pursuant to advice from Comstock’s counsel, Com-
 
 *1425
 
 stock did not mention the expired UCC financing statement to Graber.
 

 In 1991, Outdoor Poster once again defaulted on its loan. According to expert testimony before the arbitrator, the value of Outdoor Poster’s pledged equipment was greater than the outstanding loan balance at the time of default. However, because Comstock’s creditor status was subordinated when the UCC financing statement expired, foreclosure proceedings would have been futile. Instead, to force Graber into negotiations, Comstock began foreclosure proceedings against the property Graber pledged in the guarantees. After Graber challenged the foreclosure proceedings, Comstock filed a complaint in district court for a declaratory judgment to determine if expiration of the UCC financing statement, or Comstock’s failure to inform Graber of the expiration, released Graber’s obligations under the guarantees. Graber answered the complaint and filed a counterclaim against Comstock. The district court ordered the parties to arbitration pursuant to an arbitration clause in the 1989 loan documents.
 

 The arbitrator conducted a three-day hearing. Graber requested that the 1984 agreement be reformed because it was materially different from the 1983 agreement and the changes were the result of a unilateral mistake, fraud and misrepresentation. Graber also maintained that any obligation he had under the guarantees was discharged when Comstock negligently allowed their security interest to lapse. Further, Graber alleged that Comstock withheld material information from him, thereby fraudulently inducing him to pledge his personal property as security for the 1989 loan.
 

 The arbitrator refused to reform the 1984 agreement and found Graber liable to Comstock under the terms of that agreement. The arbitrator ruled that Comstock’s negligence in allowing the security interest to expire did not discharge Graber’s obligations to Comstock. The arbitrator concluded that Comstock fraudulently induced Graber to enter the 1989 agreement and awarded Graber approximately $28,500.00 to cover costs incurred in the settlement process. However, the arbitrator refused to allow rescission of the 1989 agreement because Graber could not restore the guarantee obligations of his former wife to Comstock.
 

 On July 15, 1994, over Graber’s opposition, the district court entered an order confirming the award of the arbitrator. The arbitration transcript and exhibits were not available to the district court when it reviewed the arbitrator’s award. The district court’s order stated that “absent a clear showing of error or wrongful action, the result of all [the arbitration] efforts should not be overruled.”
 

 Graber then filed this appeal, including the arbitration tran
 
 *1426
 
 script and exhibits in the record on appeal and citing them in his appellate briefs. First, Graber contends that the arbitrator abused his discretion by making findings in manifest disregard of the law. Second, Graber contends that the district court erred by referring this matter to arbitration and allegedly ordering the arbitrator to rule on issues outside the scope of the arbitration process.
 

 Comstock opposed Graber’s use of the arbitration transcript and exhibits in this appeal because they contain evidence that was not presented to the district court when it confirmed the arbitrator’s award. We ordered Graber to file a supplemental opening brief to address the use of the arbitration transcript and exhibits in this appeal. Comstock also contends that this court is precluded from considering Graber’s appeal because Graber did not raise certain issues before the trial court.
 

 DISCUSSION
 

 Common law grounds and statutory grounds exist for the review of arbitration decisions. The pivotal issue in this case is whether the statutory grounds are exclusive. We conclude they are not.
 

 At common law, any arbitration award could be reviewed to determine whether the arbitrator’s decisions were in manifest disregard of the law. The manifest disregard standard was discussed in Wilko v. Swan, 346 U.S. 427 (1953), and was later defined as an error that is “obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.” French v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 906 (9th Cir. 1986). Moreover, the term “disregard” implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.
 
 Id.
 

 The Uniform Arbitration Act (“act”), adopted in thirty-four states, was enacted by the Nevada Legislature in 1969. NRS 38.145 recites the act’s grounds for vacating an arbitration decision, stating the following:
 

 1. Upon application of a party, the court shall vacate an award where:
 

 (a) The award was procured by corruption, fraud or other undue means;
 

 (b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct substantially prejudicing the rights of any party;
 

 (c) The arbitrators exceeded their powers;
 

 (d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy . . . ;
 

 
 *1427
 
 (e) There was no arbitration agreement and the issue was not adversely determined in proceedings [to stay arbitration] and the party did not participate in the arbitration hearing without raising the objection.
 

 But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
 

 We considered NRS 38.145 and the manifest disregard for the law standard in Wichinsky v. Mosa, 109 Nev. 84, 847 P.2d 727 (1993), and concluded that a reviewing court may vacate an arbitrator’s award if the arbitrator manifestly disregards the law.
 
 Id.
 
 at 89-90, 847 P.2d at 731 (citing
 
 French,
 
 784 F.2d at 906). In
 
 Wichinsky,
 
 we also stated that if an arbitrator’s award is arbitrary, capricious or unsupported by the agreement, it will not be enforced.
 
 Id.
 
 at 89, 847 P.2d at 731 (citing Exber, Inc. v. Sletten Constr. Co., 92 Nev. 721, 731, 558 P.2d 517, 523 (1976)).
 

 A growing number of states that follow the act have strictly limited a court’s review of arbitration awards to the statutory grounds. Similarly, we have previously concluded that “[t]he district court’s power of review of an arbitration award is limited to the statutory grounds provided in the Uniform Arbitration Act.” New Shy Clown v. Baldwin, 103 Nev. 269, 271, 737 P.2d 524, 525 (1987). However, in
 
 New Shy Clown
 
 we reviewed the district court’s modification of an arbitration award to grant attorney’s fees. We concluded that no grounds existed in the act to allow a grant of attorney’s fees. The
 
 New Shy Clown
 
 court did not rule on the broader issue of a reviewing court’s common law authority to vacate arbitration awards.
 

 In a recent California decision, the California Supreme Court embraced the statutory grounds for reviewing an arbitration award and rejected any common law grounds for review. Moncharsh v. Heily & Blase, 832 P.2d 899 (Cal. 1992). In a split decision, the
 
 Moncharsh
 
 majority concluded that even if an arbitration award has an error on its face, review is improper.
 
 Id.
 
 at 919. However, the
 
 Moncharsh
 
 dissent concluded that a mistake on the face of an award, or a manifest disregard for the law, continues to justify judicial review.
 
 Id.
 
 at 919. Otherwise, a reviewing court would become
 
 the active agent of substantial injustice. Id.
 

 The
 
 Wichinsky
 
 decision solidified this court’s position that a reviewing court in Nevada may apply common law grounds to review an arbitration award. As stated in
 
 Wichinsky,
 
 a district court’s power of review is limited to statutory grounds, but “when an arbitrator manifestly disregards the law, a reviewing
 
 *1428
 
 court may vacate an arbitration award.”
 
 Wichinsky,
 
 109 Nev. at 89-90, 847 P.2d at 731. Accordingly, in this case the district court had the authority and obligation to review the arbitrator’s award to determine whether the arbitrator manifestly disregarded the law. To the extent the arbitration transcript and exhibits contained substantial evidence of a manifest disregard for the law, the district court acted improperly by failing to review the arbitration transcript and exhibits before confirming the arbitration award.
 

 Review under the manifest disregard standard does not entail plenary judicial review. City of Boulder v. General Sales Drivers, 101 Nev. 117, 694 P.2d 498 (1985). Instead, when searching for a manifest disregard for the law, a court should attempt to locate arbitrators who appreciate the significance of clearly governing legal principles but decide to ignore or pay no attention to those principles.
 
 See
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). The governing law alleged to have been ignored must be well-defined, explicit, and clearly applicable.
 
 Id.
 
 at 934. Further, courts are not at liberty to set aside arbitration awards because of an arguable difference regarding the meaning or applicability of laws.
 
 Id.
 

 In the present case, three of the arbitrator’s decisions could have manifestly disregarded the law: (1) whether the 1984 agreement should be reformed, (2) whether Comstock’s failure to renew the UCC financing statement impaired the value of collateral, and (3) whether the inability of Graber to restore the obligation of his former wife as guarantor justified the denial of rescission.
 

 Reformation of an agreement can be awarded if one party has knowledge that the other party suffers from a unilateral mistake.
 
 See
 
 Georgia Pacific Corp. v. Levitz, 716 P.2d 1057 (Ariz. Ct. App. 1986). Further, a unilateral mistake may be the basis for rescission only if “the other party had reason to know of the mistake or his fault caused the mistake.” Home Savers, Inc. v. United Security Co., 103 Nev. 357, 358-59, 741 P.2d 1355, 1356-57 (1987). Graber presented substantial evidence during the arbitration hearing that he was not aware of the material changes to the 1984 agreement when he signed the 1984 documents. Also, Comstock did not know whether Graber was aware of the changes. Accordingly, we conclude that the district court improp-. erly failed to review the arbitration hearing transcript and exhibits to determine if the arbitrator manifestly disregarded the law by
 
 *1429
 
 not applying the principles governing the unilateral mistake doctrine.
 

 Graber also presented substantial evidence that Comstock negligently failed to renew the UCC financing statement. The value of the collateral listed in the financing statement was sufficient to cover Outdoor Poster’s outstanding loan balance, thereby protecting Graber. Comstock claims that its negligence did not discharge Graber’s guarantee obligations because the 1984 agreement included a clause that waived its duty to protect the value of collateral. We conclude that if Graber suffered from a unilateral mistake while negotiating the 1984 agreements, and that mistake necessitates reformation of the 1984 agreement, the waiver of Comstock’s duty to protect the value of the collateral is void. Accordingly, the district court improperly failed to review the arbitration transcript and exhibits to determine whether the denial of reformation by the arbitrator was in manifest disregard for the law.
 

 The arbitrator also determined that rescission could not be granted without an offer of complete restoration. However, complete restoration is not necessary for rescission if the party that is not fully restored was actually at fault.
 
 See
 
 Robison v. Katz, 610 P.2d 201 (N.M. Ct. App. 1980). The arbitrator’s finding of fraud in the inducement of the 1989 agreement clearly displays Comstock’s fault. Also, evidence was presented at the arbitration hearing that Comstock remained completely protected by Graber’s real estate after his former wife was released from the guarantee obligations. Accordingly, we conclude that the district court improperly failed to review the arbitration transcript and exhibits to determine whether the guarantee obligation of Graber’s former wife represented a value to Comstock that was substantial enough to prohibit rescinding the 1989 documents. Further, the district court improperly failed to consider whether rescission should be granted without complete restoration due to the fraudulent acts of Comstock.
 

 In light of our conclusion that the district court improperly confirmed the award of the arbitrator without reviewing the arbitration transcript and exhibits, we remand this case to the district court to review the transcript and exhibits consistent with this opinion. Accordingly, we do not need to rule on Comstock’s contentions in this appeal. With respect to Graber’s contentions on appeal, our conclusion requires the district court to consider whether the arbitrator manifestly disregarded the law. However, Graber also contends that the district court erred by referring this matter to arbitration and allegedly ordering the arbitrator to rule
 
 *1430
 
 on issues outside the scope of the arbitration process. We conclude that these latter contentions are without merit.
 

 First, concerning whether this matter was properly sent to arbitration, the district court ordered Comstock and Graber to arbitrate based upon an arbitration clause in the 1989 loan documents. Graber argues that because the 1989 agreement was induced by fraud, the arbitration clause in that agreement cannot be enforced. The courts, rather than arbitrators, are generally the proper forum to decide whether a dispute must be arbitrated. Phillips v. Parker, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). Further, in
 
 Phillips
 
 we concluded that arbitrability is usually a question of contractual construction and because contractual construction is a question of law, this court can conduct its own independent review.
 
 Id.
 

 However, in Prima Paint Corp. v. Flood & Conkling Mfg. Co., 388 U.S. 395 (1967), the United States Supreme Court stated that “a general claim of fraud in the inducement of a contract is arbitrable but a specific claim of fraud in the inducement of an arbitration clause itself is for the courts to decide ...” We affirmed the
 
 Prima Paint
 
 rule in Sentry Systems, Inc. v. Guy, 98 Nev. 507, 509, 654 P.2d 1008, 1009 (1982). In
 
 Sentry Systems,
 
 we concluded that there is no question that a controversy should be submitted to arbitration when an arbitration clause is challenged through an assertion of fraud in the inducement of the contract itself.
 
 Id. at
 
 510, 654 P.2d at 1009. Accordingly, because Graber is not asserting fraud in the inducement of the arbitration clause itself, we conclude that Graber’s challenge to the district court’s order to arbitrate is without merit.
 

 Second, Graber contends that the arbitrator ruled on issues outside the scope of the arbitration agreement when, after the arbitrator issued his award, the district court remanded the case to the arbitrator to clarify three of his findings. Graber asserts that the scope of the arbitration process was limited by Comstock’s request for relief in its complaint for declaratory judgment, and the district court’s remand order requested review of issues beyond that scope. However, the scope of the parties’ submission was described in the district court’s order to arbitrate as “all disputes, actions, claims or controversies arising out of . . . any aspect of the past, present or future relationship of the parties.” In Graber’s brief to the arbitrator, he “submit[ted] to arbitration . . . any and all disputes among the parties arising out of the dealings among them.” Further, throughout the arbitration proceeding, Graber argued issues beyond the narrow issue in Comstock’s initial complaint.
 

 
 *1431
 
 We conclude that the issues addressed in the arbitrator’s clarification were within the scope of issues submitted to arbitration. This conclusion is evidenced by the broad authority granted in the district court’s order to arbitrate and by Graber’s willingness to assert a broad range of issues to the arbitrator.
 

 CONCLUSION
 

 The district court’s order confirming the arbitrator’s award is reversed, and this matter is remanded to the district court for reconsideration. On remand, the district court is directed to review the arbitration transcript and exhibits to determine, consistent with the reasoning stated in this opinion, whether the arbitrator manifestly disregarded the law.