**Stephen M. COHEN, an Individual, Plaintiff,**

v.

**Charles CARREON, an Individual; Gary Kremen, an Individual; and Does 1–100, Defendants.**

No. CV–00–235–ST.

United States District Court, D. Oregon.

April 24, 2000.

Robert S. Dorband, DuBoff & Ross, Portland, OR, for Plaintiff.

Susan K. Eggum, Susan K. Eggum, PC, Portland, OR, Steven A. Kraemer, Hoffman Hart & Wagner, Portland, OR, for Defendants.

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiff, Stephen M. Cohen ("Cohen"), brings this action against defendants, Charles Carreon ("Carreon") and Gary Kremen ("Kremen"), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC §§ 1961–1968, the Oregon Racketeer Influenced and Corrupt Organization Act ("ORICO"), ORS 166.715–.735, and four state law tort claims. Carreon and Kremen each seek an Order staying all proceedings in this case pending a final ruling in a related case entitled *Kremen v. Cohen,* Civil No. C–98–20718 JW, currently pending in the Northern District of California, San Jose Division (the "California action"). Cohen opposes the motion. This court has federal question jurisdiction over the RICO claim under 28 USC § 1331 and supplemental jurisdiction over the state law claims under 28 USC § 1367.

Now before the court are Carreon's Motion to Stay All Proceedings (docket # 5) and Kremen's Motion to Stay All Proceedings (docket # 12). For the reasons set forth below, both motions are granted.

### *BACKGROUND*

Kremen, dba Online Classifieds, Inc. ("Online Classifieds"), contends that he created the "Sex.com" Internet domain name as an item of personal property and as part of a plan involving the wholesome aspects of sex and personal relations, namely public health issues such as sexually transmitted disease education, underage pregnancy, and women's health. Califor-

nia action Third Amended Complaint ("CTAC"), ¶ 23; attached as Exhibit ("Ex") A to the Affidavit of Susan K. Eggum ("Eggum Aff"). Kremen contends that he did not intend to use this domain name as an Internet pornography distribution center. *Id.* On May 19, 1994, Kremen maintains that he delivered the "Sex.com" Internet domain name by electronic and registered mail to Network Solutions, Inc. ("NSI"), a company which had contracted with the United States government to serve as the register of Internet domain names for a term extending through September 30, 1998. He claims that by registering this domain name, he acquired all financial benefit deriving from its use in commerce. *Id,* ¶¶ 20, 24.

Kremen alleges that after being released from federal prison on February 1, 1995, Cohen began setting up sex-related businesses over the Internet. *Id,* ¶ 26. Allegedly, Cohen had previously managed a profitable sex-related business involving computer networking, realized the lucrative potential of the "Sex.com" domain name, and sought to register it with NSI. *Id,* ¶ 27. Kremen further alleges that upon learning that "Sex.com" had already been registered, Cohen devised and executed a plan to convert the domain name and the revenue it would generate because of its unique and attractive character. *Id.*

Cohen allegedly carried out this plan on November 15, 1995, by sending a letter to NSI on what purported to be official Online Classified letterhead and signed by a person acting as an Online Classifieds officer. *Id,* ¶ 29. The letter purportedly stated that Online Classifieds relinquished any interest in the "Sex.com" domain name and expressed no opposition to Cohen taking over the right to register it. *Id.* Kremen also alleges that Cohen sent an electronic mail message to NSI at about the same time purportedly from Kremen further authorizing the transfer of ownership of the domain name and providing Cohen's own telephone number as the location at which to contact Kremen. *Id.* Based on this information, NSI registered the "Sex.com" domain name to Cohen and cancelled Kremen's registration. *Id,* ¶ 30. Kremen has since demanded the return of the "Sex.com" domain name to him which NSI has refused. *Id,* ¶¶ 31–32.

On July 19, 1999, Kremen and Online Classifieds, through their attorney Carreon, filed a Third Amended Complaint against Cohen and various other defendants based on Cohen allegedly falsely obtaining Kremen's Internet domain name "Sex.com" from NSI. Kremen and Online Classifieds brought claims against Cohen and various other defendants connected to Cohen for Conversion, Conspiracy to Convert, Unfair Competition and False Advertising under California law, violation of the Lanham Act, Slander of Title, violations of RICO, and a declaratory judgment as to respective rights to the Internet domain name "Sex.com." *Id.* Kremen and Online Classifieds also brought claims against only NSI for Conversion by Bailee, Breach of Trust, Negligent Misrepresentation, Breach of Contract, and Breach of Third Party Beneficiary Contract based on NSI's position as the company responsible for registering Internet domain names and ensuring their proper registration and protection. *Id.*

The basis for the lawsuit in this court originated on February 2, 2000, when Cohen alleges that Carreon, upon instruction and direction from Kremen, sent a press release via electronic mail to various individuals in the media, including Jon Swartz ("Swartz") at *Forbes* magazine. Complaint, ¶ 8. The message allegedly identified Cohen by name and labeled him a "con man," identified his company as a "brothel management company," falsely accused him of forgery and theft of the "Sex.com." domain name, falsely accused him of using the legal process to "waste" Carreon's client's funds, falsely accused

him of intentionally stalling the legal process, and implied that his companies are not legitimate. *Id.* This message was allegedly used by Swartz as a basis for his article published in *Forbes'* online magazine. *Id,* ¶ 10. Based on the release of this message, Cohen filed suit in this court on February 15, 2000, against Carreon and Kremen.

## DISCUSSION

### I. *Preliminary Issue*

As a preliminary matter, this court notes that the Honorable John Jelderks, another Magistrate Judge in the District of Oregon, has already stayed three other actions seeking to enforce Cohen's ownership of the "Sex.com" domain name filed in this court by Cohen and/or the corporate entities which protect his interest in the "Sex.com" domain name. *Ocean Fund Int'l Ltd. v. National A–1 Adver.,* Civil No. 99–1079–JE; *Ocean Fund Int'l Ltd. v. Myriad Corp.,* Civil No. 99–1078–JE; *Ynata Ltd. v. Voice Media, Inc.,* Civil No. 00–59–JE.

### II. *Legal Standard*

■■■ A federal district court "possesses the inherent power to control its own docket and calendar." *Mediterranean Enterprises, Inc. v. Ssangyong Const. Corp.,* 708 F.2d 1458, 1465 (9th Cir.1983), citing *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it.

*Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 864–65 (9th Cir), *cert denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979) (internal citations omitted).

■■■ In determining whether to issue a stay, the Ninth Circuit instructs a district court to weigh the competing interests:

Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay.

*CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962), citing *Landis,* 299 U.S. at 254–55, 57 S.Ct. 163.

### III. *Analysis*

#### A. *Simplifying or Complicating Issues*

■■■ Among the competing interests identified in *CMAX,* this court must determine whether granting a stay will simplify or complicate issues, proof, or questions of law, while keeping in mind its goal of promoting economy of time and effort for itself, for counsel, and for the litigants. The claims in this case are substantially similar to Cohen's counterclaims in the California action, and any different claims here will be impacted by a final ruling in the California action. Cohen's First Counterclaim in the California action alleges Defamation based on statements made by Kremen to the effect that Cohen had stolen the "Sex.com" domain name. Answer

in the California action ("CA"), p. 14 (attached as Ex B to the Eggum Aff). In this case, Cohen's First Claim for Relief alleges Defamation based on statements Kremen's attorney made upon instruction by Kremen to the effect that Cohen is a con man and that he stole the "Sex.com" domain name. Complaint, ¶¶ 7–18. Although Cohen is now suing Kremen and Carreon, his attorney, for allegedly defamatory remarks made by Carreon, the two Defamation claims are similar in that the essence of both originate with ownership to the "Sex.com" domain name. Further, truth is a complete defense to a claim for Defamation under Oregon law. *Bahr v. Ettinger*, 88 Or.App. 419, 422, 745 P.2d 807, 808 (1987). If the California action decides the true owner of the "Sex.com" domain name, then this claim will be easily adjudicated in this case based on that ruling.

Cohen's Third Counterclaim in the California action alleges Intentional Interference With Prospective Economic Advantage based primarily on Kremen's statements that he owned the "Sex.com" domain name and for bringing the California action. CA, p. 15. This is exactly the same claim Cohen alleges in the Fourth Claim for Relief in this case. Complaint, ¶¶ 40–51.

Cohen's Fourth Counterclaim in the California action alleges Civil Conspiracy based on Kremen's attempts to wrest control of the "Sex.com" domain name from him and his corporate entities. CA, pp. 15–16. This claim is exactly the same claim Cohen alleges in the Third Claim for Relief in this case. Complaint, ¶¶ 35–39. Further, this claim is substantially similar, if not completely similar, to the Fifth and Sixth Claims for Relief alleged in this case. The Fifth Claim for Relief alleges that defendants violated RICO based entirely on Kremen's actions in bringing the California action. *Id,* ¶¶ 52–59. Similarly, the Sixth Claim for Relief alleges that defen-

dants also violated ORICO based entirely on Kremen's actions in bringing the California action. *Id,* ¶¶ 60–68.

Cohen's Seventh Counterclaim in the California action alleges Unfair Competition under California law based on Kremen's actions preceding the California action. CA, pp. 18–19. In this case, the Seventh Claim for Relief alleges that defendants violated Oregon's Unlawful Trade Practices Act based on Kremen's actions preceding the California action. Complaint, ¶¶ 69–71. In the California action, Cohen does not allege which section of the California Business and Professions Code Kremen and the other plaintiffs in that action violated. He only alleges that their actions constitute unfair competition under that Code. However, his allegations supporting that claim are the same allegations relied upon to support his Oregon unlawful trade practices claim.

In this case, he only alleges that defendants violated ORS 646.608(h) which states that it is an unlawful trade practice to "[d]isparage[ ] the real estate, goods, services, property or business of a customer of another by false or misleading representations of fact." Resolution of the true owner of the "Sex.com" domain name will clearly determine whether Kremen violated ORS 646.608(h). If Kremen owned the "Sex.com" domain name, then he would not have made a "false or misleading representation of fact."

Thus, the only claim alleged in this case not alleged in the California action is the Second Claim for Relief for Intentional Infliction of Emotional Distress claim. Complaint, ¶¶ 19–29. However, this claim is based entirely on the alleged mental or emotional distress Cohen suffered as a result of Carreon distributing the February 2, 2000 press release. As discussed above, truth is a complete defense to a claim for Defamation. If the press release does not give rise to a claim for Defama-

tion, then it also may not give rise to a claim for Intentional Infliction of Emotional Distress. Thus, resolution of this claim will be simplified, if not eliminated, by a final decision in the California action.

█ Cohen believes that any effect of the California action on this case would be negligible because the issues are not identical and the parties are not the same. However, the issues need not be exactly identical in order for this court to grant a stay. The test is whether *simplifying or complicating* of issues, proof, or questions of law can be expected to result from a stay such that "the orderly course of justice" is furthered. Thus, the issues need not be identical but need only be simplified by granting a stay and awaiting a final ruling in the California action. Further, the only party named in this case and not named in the California action is Carreon. However, because he is Kremen's attorney in the California action, he is fully aware of the adjudication of the claims in that case such that their adjudication may have preclusive effect against him on the claims in this case.

Because the claims in this case may be decided, or substantially narrowed, by a ruling in the California action, efficiency and fairness concerns are furthered by granting a stay. Thus, this factor weighs in favor of granting a stay of this case pending a final ruling in the California action.

### B. *Possible Damage*

This court also must weigh the possible damage which may result from granting the stay. Cohen argues that he will be damaged if this court grants defendants' motions because his lawsuit will be substantially delayed. He claims that his reputation has been severely damaged and he is entitled to redeem his "good name" in court as soon as possible. He also asserts that a stay will give a clear signal to

Carreon and Kremen that it is "open season" for them to attack him so long as the California action is pending.

Defendants respond that Cohen will not be harmed because trial in the California action is currently set to begin in June 2000 and that although that date may be pushed back a few months (into late summer or early fall), it is hardly in the distant future. They contend that if this case were to proceed unabated, the parties would likely spend many months litigating motions to dismiss, motions to compel, motions for protective orders, and motions for summary judgment and the time spent on these motions may be wasted depending on the outcome of the California action. At a minimum, they argue that the California action should greatly clarify and limit the issues in this case. Regarding Cohen's contention that a stay will send a signal that they are free to attack him, defendants respond that such a contention is absurd because his claims are being stayed, not dismissed, and even if do they commit some tortious act in the interim, the stay would not affect their ultimate liability for such an act.

Cohen would not be damaged if this court granted defendants' motions to stay this case pending a final ruling in the California action. Although Cohen has a right to have his case heard as expeditiously as possible, that right is clearly outweighed in this case by the factors surrounding a preexisting case which concerns most of the same or substantially similar issues with almost identical parties and which will most likely clarify, if not resolve, the claims alleged in this case. The preexisting case is set to go to trial soon. Waiting several months for a decision which may limit, if not completely preclude, all claims in this case will not cause Cohen additional harm. In fact, Cohen actually will be helped and not harmed by a final ruling in the California action because he could use a favorable judgment

in that action to assist him in proving his claims here. However, if that judgment is unfavorable to him, then he will have saved considerable time and money by not going forward with this case since it would be precluded by the unfavorable judgment. In addition to Cohen saving considerable time and money, this court also will save a tremendous amount of time and resources by not having to concern itself with motions in this case if the California action eliminates, or at least simplifies, the issues pending here.

Further, granting a stay will not send a signal to Carreon and Kremen that they can freely attack Cohen pending a final ruling in the California action because Carreon and Kremen both know that they will be held responsible for any unlawful act they perpetrate on Cohen, especially making any false and defamatory statements about Cohen.

Because Cohen will not be harmed if this court stays this case, this factor weighs in favor of granting a stay.

### C. *Defendants' Hardship or Inequity*

Finally, this court must weigh the hardship or inequity which either party may suffer by proceeding with this case. Defendants argue that proceeding with this case is burdensome to them. First, based on their view of Cohen's claims in this case, defendants argue that they would be required to waste time and money needlessly litigating the same substantive and procedural issues as they did in the California action. This concern is valid, given the fact that, as discussed above, a final decision in the California action will eliminate, if not simplify, the issues pending here.

Second, based on their view that this case does little more than allege dissatisfaction with the California action, defendants argue that they would be burdened by having to defend against a frivolous lawsuit because they would each have to expend time and money retaining additional counsel due to potential conflict issues between themselves. This argument has merit since the interest of defendants may not be completely identical in this case, requiring them to most likely hire separate legal counsel. Cohen is claiming that Carreon acted upon Kremen's request when issuing the press release and Kremen may deny that he requested Carreon to issue the press release. Further, the issues mentioned in the press release originate in the California action in which Carreon represented Kremen. Other privilege and conflict issues most likely will arise because of that relationship.

Third, defendants argue that they would be burdened by being required to expend time and money managing this case in order to avoid the creation of a potential conflict of interest in the California action. As discussed above, this argument also has merit. Because the California action is ongoing, defendants would unfairly have to be careful in this case that they do not say or do something, such as taking differing positions with respect to the press release, which would give rise to a conflict in that action. If a conflict now arose in that action, the parties and that court would be set back many months while new counsel for Kremen is brought up to speed. Defendants should not have to be burdened with that extra concern, especially when the California action is nearing completion with trial set to begin in only a few months.

Fourth, defendants argue that they would be burdened by the fact that Cohen could get a second chance at discovery in the California action and revisit every adverse discovery ruling by the California court here in Oregon. Once again, defendants raise a very relevant and valid concern. Apparently, every move in the California action has been

very hotly contested, including every discovery issue. Because the bases for Cohen's claims in this court originate in the California action, he likely could seek to obtain material that the California court ruled was nondiscoverable or irrelevant. If that occurred, then he could obtain a second "bite at the apple" in this court. The result is that Cohen would have an unfair opportunity to revisit ·every adverse ruling by the California court which this court is loathe to allow. Allowing this claim to proceed invites such a situation to occur which would unnecessarily burden this court's time and resources. As discussed above, resolution of the California action will simplify, if not eliminate, the issues pending here. This court also could limit discovery based on that ruling thus providing consistent rulings.

Fifth, defendants argue that they would be burdened because discovery and privilege issues would inevitably arise in this case because the claims here arise from the California action in which they are appearing as attorney and client. As an example, they argue that Cohen may seek to depose Carreon regarding the information on which the statements in the press release were premised. The answer to that question may include attorney-client privileged conversations Carreon had with Kremen, including Carreon's advice to Kremen, his opinions and tactics in the California action, his assessment of the evidence in the California action, and his assessment of the evidence supporting Kremen's claims in the California action. They argue that even though Carreon would not be required to answer those questions, he may need to voluntarily disclose some of that information in order to defend himself against Cohen's claims in this case in which motive and intent are an issue. This fear is justified.

Normally, an attorney may not reveal client "confidences"[1] or "secrets." However, under Oregon Disciplinary Rule 4–101(C)(4), an attorney may reveal

> [c]onfidences or secrets necessary to establish a claim or defense on behalf of a lawyer in a controversy between the lawyer and the client, to establish a defense to a ... civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations concerning the lawyer's representation of the client.

Thus, Carreon would be allowed to disclose discussions he had with Kremen about the California action in order to defend himself here: However, allowing this case to proceed would essentially force Carreon to utilize this provision which would then place an unnecessarily strenuous burden on Carreon's and Kremen's attorney-client relationship in the California action. If that occurred, the most likely result would be that Carreon could not effectively represent Kremen in that action, forcing Kremen to hire a new attorney. Such a result would be extremely burdensome on all parties, including the California court, especially since the trial is set to begin in only a few months.

Cohen's only response to defendants' arguments is that Carreon is an Oregon resident, is apparently fully familiar with all of the issues in this case, is fully prepared to defend himself in this case, and therefore would suffer no hardship if the court denied his request for a stay. However, simply because Carreon is an Oregon resident and may well be aware of all of the issues in this case does not mean that he or his client and (co-defendant) are not overly burdened by having to defend this case while the California action is still

---

1. "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in a current or former professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client. Oregon Disciplinary Rule 4–101(A).

pending. As defendants indicate, serious issues concerning the attorney-client privilege will arise in this case because Cohen is suing an attorney and his client based on material surrounding a pending action. Although Carreon can waive the privilege and testify about certain conversations and actions to defend himself, it would be extremely burdensome, if not completely inequitable and unfair, to require that in this case until the first action has been completed and Carreon no longer represents Kremen. Further, this court wonders why Cohen filed this action and why he opposes any motion to stay this case pending a final result in the California action. It appears that Cohen may be simply harassing Kremen and his attorney. If that is true, granting a motion to stay will promote justice and economy for all.

Because denying defendants' motions to stay would place an overwhelming burden on them, this factor weighs in favor of defendants.

### IV. *Conclusion*

All three *CMAX* factors weigh in favor of defendants' request for a stay of this case pending a final ruling in the California action. The claims in both cases are substantially similar, if not identical; Cohen will suffer little harm if a stay is granted; and defendants will be unfairly overly burdened if a stay is not granted.

### *ORDER*

For the reasons set forth above, defendant Carreon's Motion to Stay All Proceedings (docket # 5) and defendant Kremen's Motion to Stay All Proceedings (docket # 12) are granted. Plaintiff shall submit a written status report every 90 days, commencing July 31, 2000.